922 P.2d 986

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Iese TANIELU, Defendant–Appellant.**

**No. 17348.**

Intermediate Court of Appeals of Hawai'i.

June 28, 1996.

---

Renee N. Costa, Deputy Public Defender, on the brief, Honolulu, for defendant-appellant.

Robert K. Kekuna, Deputy Prosecuting Attorney, County of Maui, on the brief, Wailuku, Maui, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

Defendant–Appellant Iese Tanielu (Defendant) was charged with abuse of a family member under Hawai'i Revised Statutes (HRS) § 709–906 (1993). HRS § 709–906 provides in relevant part, that "[i]t shall be unlawful for any person, singly or in concert, to physically abuse a family or household member[.]" After a bench trial with his wife, Ruth Tanielu (Wife), as a co-defendant, Defendant was found guilty under HRS § 709–906 and was sentenced to one year of probation and thirty days' imprisonment as a term of probation. Judgment was entered on July 9, 1993. We affirm.

## I.

Defendant's daughter (Daughter) began dating eighteen-year-old Walter Puuoi (Boyfriend) when she was thirteen years old, and she was fourteen years old at the time of the incident.[1] Wife had known Boyfriend "for a year" through her work at a youth center, and she believed Boyfriend came from a "destructive family," had a "record," and was verbally and physically "very abusive[.]" Defendant informed Daughter that he was opposed to her relationship with Boyfriend, and together with Wife, attempted various strategies in an effort to dissuade Daughter from continuing her relationship with Boyfriend. They tried talking to her, terminating her participation in athletic activities, and withdrawing her telephone privileges. They also sent Daughter to live with her grandmother for a time. Nevertheless, Daughter continued to see Boyfriend, often absenting herself from school to do so.

After learning that Daughter was continuing to see Boyfriend, Defendant and Wife had a discussion with Daughter. They expressed their displeasure to Daughter and explained why they were so concerned about the relationship. Two days later, Boyfriend went to Wife's workplace, where he confronted Wife and told her that she had no right to forbid her daughter from seeing him. Using expletives, Boyfriend threatened to have his father shoot Defendant in the head. Boyfriend then pushed Wife to the ground as he left.

Eventually, Daughter agreed not to see Boyfriend until she had completed high school. Unbeknownst to Defendant, however, Daughter continued to date Boyfriend.

In May of 1993, Wife discovered Daughter's deception and informed Defendant. When confronted, Daughter confirmed that she had not attended classes in order to see Boyfriend and that she had spent some of the days with Boyfriend in his bedroom. Wife made arrangements for a pelvic examination to determine whether Daughter was pregnant. On May 17, 1993, the day of the scheduled examination, Daughter ran away from home to live with Boyfriend at his home.

On May 17, 1993, after meeting with an uncooperative Boyfriend and Boyfriend's father, Wife and her brother retrieved Daughter from Boyfriend's home.[2]

---

1. The record does not specifically reveal when Daughter began seeing Boyfriend. However, the State and Defendant both indicate in their briefs on appeal that Daughter began seeing Boyfriend when she was thirteen years old and he was eighteen years old.

2. Wife testified that she spoke to Boyfriend's father at Boyfriend's house. Boyfriend's father

Defendant arrived home shortly after Wife and Daughter returned home. Both parents met with Daughter, and Wife proceeded to ask Daughter about her relationship with Boyfriend. Wife slapped and punched Daughter when Daughter became unresponsive. Although Defendant was shorter than Daughter, he was physically stronger. Daughter stood up, and Defendant kicked Daughter in the shin in an effort to re-seat her. Daughter remained unresponsive, and Defendant and Wife continued to punch and slap her. Defendant testified that he slapped Daughter six or seven times, punched Daughter once or twice, and kicked her. Daughter testified that both Defendant and Wife punched her in the face five to ten times, and Defendant kicked her in the face five to ten times. Defendant later punched her one to five times in the face, stomped on her face, and pulled her ears.[3] The police arrived shortly thereafter.

Officer Mike Victorine (Officer Victorine) observed Daughter sitting on the floor with "numerous contusions and lacerations to her facial area and her neck ... [and] bruises on her legs[.]" Photos of Daughter's injuries were later taken at the police squad room and at the hospital emergency room.

## II.

In *State v. Nomura,* 79 Hawai'i 413, 416, 903 P.2d 718, 721 (App.), *cert. denied,* 80 Hawai'i 187, 907 P.2d 773 (1995) and *State v. Ornellas,* 79 Hawai'i 418, 421, 903 P.2d 723, 726 (App.), *cert. denied,* 80 Hawai'i 187, 907 P.2d 773 (1995), we held that the term "physical abuse" under HRS § 709–906 included "maltreat[ment] in such a manner as to cause injury, hurt or damage to that person's body." Defendant does not challenge the sufficiency of the evidence establishing a violation of HRS § 709–906, but disputes the family court's rejection of his parental use of force defense under HRS § 703–309. HRS

§ 703–309 (1993) provides in relevant part as follows:

> The use of force upon or toward the person of another is justifiable under the following circumstances:
>
> (1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of a parent, guardian, or other responsible person, and:
>
> (a) The force employed is with due regard for the age and size of the minor and is *reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and*
>
> (b) The force used is not designed to *cause or known to create a risk of causing substantial bodily injury,* disfigurement, extreme pain or mental distress, or neurological damage.

(Emphases added.)

On appeal, Defendant contends that (1) the family court improperly applied the "reasonably related" standard in HRS § 703–309(1)(a), (2) the State failed to prove that Defendant's use of force was designed to cause or known to create a risk of causing substantial bodily injury under HRS § 703–309(1)(b), and (3) the State failed to prove Defendant "was not justified in using the amount of force" he used. As Defendant's last contention is essentially a summary of Defendant's first two points, our review focuses on Defendant's first two points of error.

## III.

■ The prosecution disproves a defense when it "prove[s] beyond a reasonable doubt facts negativing the defense." *State v. Gabrillo,* 10 Haw.App. 448, 456, 877 P.2d 891,

seemed to feel that Defendant and Wife could do nothing to prevent Boyfriend and Daughter from engaging in sexual relations. Boyfriend challenged Wife's brother, who had accompanied Wife, to a fight and threw objects at the car as Wife, her brother, and Daughter left.

**3.** The family court found as follows:

Okay. Taking both cases together, the findings that I would make were that both [Defendant] and [Wife] slapped and punched [Daughter], and by "punched", I mean hit [Daughter] with a closed fist in the face; that [Defendant] kicked her in the leg and also kicked her in the back and face and pulled her ears.

895 (1994) (citations and quotation marks omitted). "The prosecution ... does this when the [trier of fact] believes its case and disbelieves the defense." *Id.* at 456–57, 877 P.2d at 895 (citation and quotation marks omitted). By its decision, the family court obviously believed the prosecution's case and disbelieved Defendant's HRS § 703–309 defense.

 In determining whether to uphold the family court's decision, we must review the evidence adduced in the family court "in the strongest light for the prosecution" when evaluating the "legal sufficiency of such evidence to support a conviction[.]" *State v. Batson,* 73 Haw. 236, 248, 831 P.2d 924, 931, *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992). On appeal, the test "is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." *Id.* (citations omitted). " 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *Id.* (quoting *State v. Lima,* 64 Haw. 470, 475, 643 P.2d 536, 539 (1982)); *accord Gabrillo,* 10 Haw.App. at 459, 877 P.2d at 896 (substantial evidence is "evidence which a reasonable mind might accept as adequate to support the conclusion of the factfinder") (citations and quotation marks omitted).

IV.

The State's answering brief does not respond to Defendant's first point but asserts only that Defendant's use of force exceeded the bounds established under HRS § 703–309(1)(b).

The family court made the following oral findings with respect to HRS § 703–309(1)(b):

The next section which must also be found is that force used does not designate—designed to cause—and now this is

where the statute has been changed significantly. *Now the onus is, or known to cause a risk, not a substantial risk, just a risk of causing substantial injury, not serious bodily injury.* Substantial bodily injury is not defined in the definitional sections that I find it. Oh, yes, it is. I'm sorry.

Substantial bodily injury means bodily injury which causes a major avulsion, laceration or penetration of the skin, electrical friction, scalding, fracture, concussion, tearing, rupture, or corrosive damage of the esophagus visceras.

So, I don't know what an avulsion is. I know what a laceration is, and I know what penetration of the skin is. *Clearly that happened in this case, laceration and penetration of the skin.*

*So not only did they create a risk, it actually happened.* And therefore the defense is beyond a reasonable doubt overcome by the evidence of the State.

(Emphases added.)

A.

 Defendant argues that the State failed to show Daughter's injuries "rose to the level of substantial bodily injury." "Substantial bodily injury" as used in HRS § 703–309(1)(a) is derived from HRS § 707–700 (1993). *State v. Crouser,* 81 Hawai'i 5, 13, 911 P.2d 725, 733 (1996). HRS § 707–700 provides in relevant part that " '[s]ubstantial bodily injury' means bodily injury which causes (1) [a] major avulsion, laceration, or penetration of the skin[.]" "Bodily injury" is defined in HRS § 707–700 as "physical pain, illness, or any impairment of physical condition."

The court found that "clearly [lacerations and penetration of the skin] happened in this case." While Defendant contends that there was no evidence that Daughter suffered injuries of "penetration of the skin," a laceration may be included in the definition of "penetration of the skin." [4] Hence, in referring to

4. The category of "substantial bodily injury" was added to Hawai'i Revised Statutes (HRS) § 707–700 in 1986. The relevant legislative reports do not draw a distinction between the term "lacera-

tion" and the term "penetration of the skin" in HRS § 707–700 (1993). Webster's Third New International Dictionary defines "lacerate" as "to tear or rend roughly: wound jaggedly[,]" and

"lacerations" hereinafter, we incorporate the court's finding that Daughter suffered "penetration of the skin."

### B.

The court's finding that Daughter suffered lacerations was supported by the testimony of Officer Victorine who observed "numerous lacerations and contusions" on Daughter.

■■■ Defendant argues, however, that Officer Victorine's lay testimony was not corroborated by "medical evidence." Hawai'i Rules of Evidence (HRE) Rule 701 sets the standard for the admissibility of a lay witness's opinion testimony:

> **Opinion testimony by lay witnesses.** If the witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue.

For lay opinion testimony to be admissible under HRE Rule 401, " 'the witness must have personal knowledge of matter tha[t] forms the basis of testimony of opinion; the testimony must be based rationally upon the perception of the witness; and of course, the opinion must be helpful to the [fact finder] (the princip[al] test).' " *State v. Toyomura,* 80 Hawai'i 8, 25, 904 P.2d 893, 910 (1995) (brackets added) (quoting 1 J. Strong, *McCormick on Evidence* § 11, at 45–46 (4th ed.1992) (footnote omitted)). "The 'rational' test means whether the opinion 'is one which a normal person would form on the basis of the observed facts.' " *Id.* (quoting 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 701[02], at 701–18 (1992) (footnotes omitted)). Accordingly, evidence of bodily injury may be established by lay testimony which is

rationally based on the perception of the witness. HRE Rule 701; *cf. Cozine v. Hawaiian Catamaran, Ltd.,* 49 Haw. 77, 113, 412 P.2d 669, 691 ("The general rule is that a nonexpert witness who has had suitable opportunity for observation may state inferences from transient physical appearances, as that a person was in pain and suffering," where all the facts cannot be placed before the jury and the inference is not one requiring "special skill, knowledge and experience[.]"), *reh'g denied,* 49 Haw. 267, 414 P.2d 428 (1966). Officer Victorine arrived shortly after the incident and observed Daughter after the assault. The lacerations and contusions he testified to were visible bodily injuries which would be observable by a normal person.

Unless there is a specific demonstrable need for expert testimony under HRE Rule 702,[5] such as where the trier of fact must be aided in understanding the mechanics of the injury, the testimony of a lay person under HRE Rule 701 may suffice to establish evidence of bodily injury.

### C.

■■■ Defendant further maintains that the term "major" in HRS § 707–700(1) modifies "avulsion, lacerations, or penetration of the skin." We agree and thus hold that a plain reading of HRS § 707–700 imposes a requirement that a laceration must be "major" in order to fall within the scope of the definition. In this context, the definition of "major" as "greater as in size, amount, extent, or rank" would appear to apply. *The Random House College Dictionary* 807 (rev. ed.1979). This definition finds support in the legislature's intent to "account for injuries which are far more serious than mere bodily injury but do not approximate a risk of death or permanent loss or disfigurement" in the

---

"laceration" as "a breach or wound made by lacerating[.]" *Webster's Third New International Dictionary* 1261 (1966). It also defines "penetrate" as "to pass into or through[;] to extend into the interior of[;] ... to enter or go through by overcoming resistance[;] ... to pass, extend, pierce, or diffuse into or through something[.]" *Id.* at 1670. Applying the ordinary meanings of the terms, it would appear that every laceration would constitute a penetration of the skin.

**5.** Hawai'i Rules of Evidence (HRE) Rule 702 allows a "witness qualified as an expert by knowledge, skill, experience, training, or education" to testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]"

definition of "substantial bodily injury." Hse. Conf. Comm. Rep. No. 51, in 1986 House Journal, at 937.

While the family court quoted verbatim from the relevant statutory language in HRS § 707–700, it did not refer to the lacerations as "major" when it found that Daughter's injury caused lacerations. Moreover, in finding that Daughter suffered lacerations and that Defendant "create[d] a risk of causing substantial injury" to Daughter under HRS § 703–309(1)(b), the court did not find that Defendant created a risk of causing a "major" laceration. It does not appear that the court considered the question of whether the lacerations caused were "major" or whether Defendant's use of force created a risk of a "major" laceration.[6]

When the family court apparently failed to apply the legal requirement that lacerations suffered by Daughter or for which she was put at risk were or would be "major," it reversibly erred. We may overturn an erroneous interpretation and application of a statute. *Cf. State v. Wallace,* 80 Hawai'i 382, 391, 910 P.2d 695, 704 (1996) (stating that a conclusion of law supported by the trial court's findings of fact which "reflects an application of the correct rule of law will not be overturned") (citations and internal quotation marks omitted).

Nevertheless, "[b]ecause the requirements of HRS § 703–309(1) are set out in the conjunctive, rather than the disjunctive, the prosecution needed only to disprove one element beyond a reasonable doubt to defeat the justification defense." *Crouser,* 81 Hawai'i at 11, 911 P.2d at 731.

We examine, then, Defendant's argument relating to HRS § 703–309(1)(a).

## V.

Defendant alleges that the family court seemingly rejected punishment as an objective which was "reasonably related," as that phrase is used in HRS § 703–309(1)(a), to Daughter's welfare under the circumstances of the case. He focuses on the following portion of the court's oral decision:

> Then the major defense alleged is the right to discipline under 703–3[0]9. That statute has been amended in 1992 to add that reasonably related purpose. The argument is, as I hear it, would be conduct was of [sic] such nature that the physical discipline can be that much greater. It's difficult for me to weigh how much [Daughter's] misconduct is misconduct and how great it is.
>
> I can be very sympathetic with the parents dealing with the problems Mr. and Mrs. Tanielu are dealing with. However, given the circumstances this occurred, which was basically either punishing [Daughter] for the past conduct, is one way to look at it, that she done something very bad, she lied, she gone out with [Boyfriend] and so forth. Or is it preventing [Daughter]—more misconduct which is also being argued. *And there was nothing really to establish the belief, the attack which was made on her was at all reasonably likely to stop her from doing the very same thing again. In fact all the testimony seemed to be that nothing worked on [Daughter].*
>
> And I *guess I would find that there was not—the viciousness of the attack was just [sic] reasonably related to the purpose of safeguarding or promoting the child's welfare.*

(Emphases added.)

Because the question of whether the force employed was reasonably related to the welfare of the minor involves the trial court's evaluation of mixed questions of law and fact, the trial court's conclusion on this issue, insofar as it is dependent upon the facts and circumstances of the case, is reviewed on appeal under the clearly erroneous standard. *Crouser,* 81 Hawai'i at 10, 911 P.2d at 730. However, to the extent the conclusion is premised on the court's interpretation of the applicable statute, the conclusion is freely

---

6. Although Officer Victorine testified he saw "lacerations and contusions," the photographs of Daughter which were admitted into evidence do not reveal any lacerations. While Daughter testi- fied to feeling pain in her "face and in [her] jaw" and that her "whole body was numb[,]" she did not testify to suffering any lacerations.

reviewable on appeal. *See State v. Hoey,* 77 Hawai'i 17, 28, 881 P.2d 504, 519 (1994).

 Applying the "freely reviewable" standard, we hold that the trial court was wrong when it concluded that the "reasonably related" standard in HRS § 703–309 precludes altogether the use of disciplinary force simply because prior non-physical alternatives failed to prevent the minor's continuing misconduct. Where a parent's non-physical disciplinary alternatives fail to prevent his or her minor child's continuing misconduct, a parent might justifiably believe that the use of physical force was the only proper alternative left to the parent to fulfill his or her obligation under HRS § 577–7 (1993)[7] to control his or her child's conduct. We hold that, insofar as the court found that physical punishment could not be reasonably related to deterring future misconduct "because nothing [had] worked on [Daughter]," it was incorrect.

Prevention and punishment of a child's misconduct are both included in HRS § 703–309 as examples of when a parent's use of force may be "reasonably related to the purpose of safeguarding or promoting the welfare of the minor." Accordingly, on its face, HRS § 703–309 permits the use of physical force to punish a minor child for his or her misconduct and to deter that minor from future misconduct. A parent's use of physical force to punish or deter, therefore, is not subject to criminal liability provided it is reasonably related to the welfare of the minor and within the scope of allowable physical force under the statute. Although the use of physical force as a child-rearing method may engender debate, it is an option parents are free to employ within the bounds of the statute.

But the phrase "reasonably related" in HRS § 703–309(1)(a) "makes clear that physical discipline may be so excessive that it is no longer reasonably related to safeguarding the welfare of the minor, even if it does not exceed the bounds set in subsection [(1)](b)." *Crouser,* 81 Hawai'i at 12, 911 P.2d at 732.

7. HRS § 577–7(a) (1993) provides in relevant part that parents "shall have control over the conduct and education of their minor chil-

The family court found that the "viciousness of the attack" Defendant was involved in severed any relationship between the use of force and the welfare of Daughter which might be considered "reasonable." Based on the number and nature of the slaps, punches, and kicks Defendant inflicted on Daughter, and Officer Victorine's observation of Daughter's lacerations and contusions, we cannot say that the family court's finding was clearly erroneous.

## VI.

For the foregoing reasons, we affirm the July 9, 1993 judgment of the family court.

dren.... All parents ... shall provide, to the best of their abilities, for the discipline, support, and education of their children."