965 P.2d 133

**Heidi–Lynn K.M. REZENTES,
Plaintiff–Appellee,**

v.

**Wallace G. REZENTES, Jr.,
Defendant–Appellant.**

No. 20866.

Intermediate Court of Appeals of Hawai'i.

Aug. 12, 1998.

Calvin K. Murashige (Shiraishi & Murashige), Lihue, on the briefs for defendant-appellant.

Lyle S. Hosoda and Mary H.Y. Bahng (Perkin & Hosoda), Honolulu, on the brief for plaintiff-appellee.

Before BURNS, C.J., ACOBA, and KIRIMITSU, JJ.

ACOBA, Judge.

We hold that the family court of the fifth circuit (the family court) was correctly guid-

ed by Hawai'i Revised Statutes (HRS) § 703–309(1) (1993) pertaining to permissible use of force by a parent, in determining whether force used in disciplining children constituted "family violence" under HRS § 571–46(9) (1993), one of the provisions which relates to child custody. Similarly, in our view, the definition of "family violence" as it has been recently defined in HRS § 571–2 (Supp.1997) and as it pertains to the current version of HRS § 571–46(9) (Supp. 1997) would not extend to force used to discipline a child as allowed by HRS § 703–309(1).

Even assuming that where, under HRS § 571–46(9) (Supp.1997), evidence of family violence raises a rebuttable presumption that it is detrimental for a child to be placed in custody with the perpetrator of family violence, that presumption is of the type described in Hawai'i Rules of Evidence (HRE) Rule 303 (1993) and may be rebutted by producing evidence which would support its non-existence.

In the instant case, we conclude that the family court's finding that Plaintiff–Appellee Heidi Lynn K.M. Rezentes (Wife) did not commit family violence as asserted by Defendant–Appellant Wallace G. Rezentes (Husband), but administered physical discipline to the parties' children permitted by HRS § 703–309(1), was not clearly erroneous. We also believe that were the presumption in HRS § 571–46(9) (Supp.1997) applicable herein, it would have been rebutted.

Accordingly, we affirm the July 1, 1997 decree awarding sole legal and physical custody of the parties' children to Wife.

## I.

### A.

Husband and Wife were married on March 3, 1990. They have a daughter (Daughter) and a son (collectively, the children), both of minor age.

Pertinent to this appeal is a December 1, 1995 incident referred to at the divorce proceeding.

Husband testified that he and his friend, Henry Kupihea (Kupihea), were at the par-

ties' home when Daughter ran into the residence screaming and holding her face. Daughter stated that Wife had hit her. Husband related that he then ran outside to the car occupied by Wife, tapped on the window, and asked Wife why she had struck Daughter. Husband indicated that he returned to the residence and Wife followed. According to Husband, Wife began yelling at Daughter inside the residence and that he had to position his body between her and Daughter in order to protect Daughter. Husband declared that Wife struck him "a number of times" while he was protecting Daughter.

Kupihea testified that on the morning of December 1, 1995, he was at the parties' residence and saw Wife and Daughter leave. Daughter then ran back into the residence, crying and holding her face. Kupihea reported seeing a red mark on Daughter's face. Kupihea also said he saw Wife strike Husband three or four times after Wife returned to the residence.

Husband's mother testified that on December 1, 1995, she observed that Daughter's cheek was red and that she was crying because "she said her mommy hit her[.]"

Wife testified that she did not strike Daughter on December 1, 1995. According to Wife, she and the children were in the car and about to leave for school, but Daughter had forgotten her lunch box. Because it was close to the time she needed to be in school, Daughter responded to the "pressure" by crying and running back into the house. Wife recounted that she and Husband began arguing, there was pushing and shoving, and Husband struck her in the face and in the breast area.

### B.

On March 1, 1996, Wife filed a motion for a temporary restraining order stating that Husband had struck her in the face and left breast area.

On March 11, 1996, Wife filed a complaint for divorce.

On March 12, 1996, Wife filed a motion and affidavit for temporary relief seeking, *inter*

*alia,* temporary sole legal and physical custody of the children.

On March 22, 1996, Husband also filed a motion and affidavit for temporary relief seeking, *inter alia,* temporary sole legal and physical custody of the children. In this motion, Husband alleged that on December 1, 1995, Wife struck Daughter in the face and then punched, struck, and kicked Husband as he attempted to prevent further contact between Daughter and Wife.

In conjunction with the March 1, 1996 motion, the parties apparently stipulated to an April 14, 1996 order restraining Husband from contacting, threatening or abusing Wife.

On September 27, 1996, after hearings on the matter, the family court ordered that Wife have temporary legal and temporary primary physical custody of the children, subject to Husband's rights of reasonable visitation.

The divorce trial was held on May 6, and May 13, 1997.

On July 1, 1997, the family court entered a decree granting the divorce and awarding sole legal and physical custody of the children to Wife, subject to Husband's rights of reasonable visitation.

On July 25, 1997, Husband appealed that part of the July 1, 1997 decree awarding child custody to Wife.

On September 25, 1997, the family court entered findings of fact (findings) and conclusions of law (conclusions).

## II.

Husband contends that the family court erred in three respects in awarding custody of the children to Wife: (1) the family court failed to make a finding as to whether or not family violence had occurred; (2) the family court erred by not finding that the December 1, 1995 incident constituted family violence; and (3) the family court did not address whether or not the presumption against awarding custody to Wife, as an alleged perpetrator of family violence, had been effectively rebutted.

Husband's arguments, as well as Wife's responses, are all based on HRS § 571–46(9) (Supp.1997) and on the definition of "family violence" set forth in HRS § 571–2 (Supp. 1997). It appears, however, that the 1997 version of these provisions contains amendments that did not become effective until after the present action was commenced, and, therefore, HRS § 571–46(9) (1993) would apply to the instant case.[1] We first address Husband's first and second arguments as they relate to the 1993 version of HRS § 571–46(9) (1993).[2]

That section provided:

---

1. Hawai'i Revised Statutes (HRS) § 571–46(9) (1993) was amended on June 17, 1996, with the approval of Act 198. 1996 Haw. Sess. L. Act 198, §§ 3, 7, at 451, 453. Act 198 also amended HRS § 571–2 (1993) by adding a definition of the term "family violence" to HRS chapter 571 (1993). *Id.* at § 2, at 450. Act 198 provided, *"This Act does not affect* the rights and duties that matured, penalties that were incurred, and *proceedings that were begun, before its effective date." Id.* at § 5, at 453 (emphases added). The effective date of Act 198 was June 17, 1996, *id.* at § 7, at 453, and Plaintiff–Appellee Heidi–Lynn K.M. Rezentes (Wife) had filed for divorce and custody on March 11, 1996, over three months prior to the effective date. The parties did not raise the question of the applicability of HRS §§ 571–46(9) and –2 as amended by Act 198.

On May 27, 1998, we temporarily remanded this case to the family court of the fifth circuit (the family court) for additional findings of fact and conclusions of law on the issue of the applicability of HRS §§ 571–46(9) and –2 (Supp. 1997). On July 10, 1998, the family court, find-

ing that Wife's complaint was filed on March 11, 1996, concluded that HRS §§ 571–46(9) and –2 (Supp.1997) did not apply to proceedings begun before June 17, 1996. Although in our temporary remand order we permitted the parties to file supplemental briefs in light of the family court's additional findings and conclusions, no supplemental briefs have been filed.

2. Although, as noted above, all of the arguments made by Defendant–Appellee Wallace G. Rezentes (Husband) are based on HRS § 571–46(9) (Supp.1997), his first and second arguments can be addressed in the context of the 1993 version of that statute. His third argument, concerning a rebuttable presumption against awarding custody to a perpetrator of family violence, cannot be addressed with reference to HRS § 571–46(9) (1993) because, unlike the 1997 version, the 1993 version did not include such a presumption.

We observe that both the Senate and the House reports for the 1993 amendments to HRS § 571–46(9) (1993) did state that the purpose of

The court shall consider evidence of *family violence*, including but not limited to spouse abuse, the determination regarding who was the primary aggressor, and the frequency and degree of family violence as factors in determining the best interests of the child in establishing custody and visitation rights. If custody is given to a person against whom there is evidence of family violence, the court shall include, in its written order, the reasons for the decision. If there is evidence of family violence, an award of joint custody or any grant of visitation shall be arranged so as to best protect the child and the abused parent from further harm.

(Emphasis added.) No definition of the term "family violence" was contained in HRS chapter 571 (1993).

### III.

Husband first argues that the family court reversibly erred by "neglect[ing] to address whether the actions by Wife on December 1, 1995 constituted family violence."

### A.

■ Preliminarily, we conclude that the family court did not err in failing to include an explicit determination regarding family violence in the initial findings and conclusions filed on September 25, 1997. HRS § 571–46(9) (1993) states that "[t]he court shall consider evidence of family violence ... in determining the best interests of the child in establishing custody and visitation rights." That section further provided that "[i]f custody is given to a person against whom there is evidence of family violence, the court shall include, in its written order, the reasons for the decision." Although a finding as to whether there was evidence of family violence would be helpful where such a contention is made at trial, neither of these statutory commands required that the family court

make a specific finding that family violence had *not* occurred.

In *Nani Koolau Co. v. K & M Construction*, 5 Haw.App. 137, 681 P.2d 580 (1984), this court stated:

Where an appellant alleges that the trial court failed to make adequate findings of fact, the appellate court will examine all the findings, as made, to determine whether they are (1) supported by the evidence; and (2) sufficiently comprehensive and pertinent to the issues in the case to form a basis for the conclusions of law. If those findings include sufficient subsidiary facts to disclose to the reviewing court the steps by which the lower court reached its ultimate conclusion on each factual issue, then the findings are adequate.

*Id.* at 140, 681 P.2d at 584 (citations omitted). *Doe IV v. Roe IV*, 5 Haw.App. 558, 705 P.2d 535 (1985), elaborated on these principles:

The trial judge is required to only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts. All that is required are brief, definite and pertinent findings, not elaborate findings *nor negative findings of fact.*

*Id.* at 565–66, 705 P.2d at 542 (emphasis added) (internal quotation marks and citations omitted).

In the instant case, although the family court did not at first make a specific finding with respect to the December 1, 1995 incident, it was unnecessary to do so because such a finding was subsumed by the findings which the family court did make. In particular, the family court found that "[Wife] also on occasion administered *physical discipline* including slapping Daughter on the face and pinching and pulling the ears of the children as [Wife's] parents had disciplined her." (Emphasis added.) Accordingly, we agree with Wife that the family court impliedly found that no "family violence" had occurred.

the amending bill was "to create a rebuttable presumption against an award of custody to a parent who has a history of being an abusive spouse or parent." Sen. Stand. Com. Rep. No. 974, in 1993 Senate Journal at 1130; Hse. Stand. Com. Rep. No. 197, in 1993 House Journal at 1044. However, the Senate report then

declared that the Senate Judiciary Committee "amended the bill to *delete the presumption aspects* and the requirement that family violence be proven." Sen. Stand. Com. Rep. No. 974, in 1993 Senate Journal at 1130 (emphasis added). Accordingly, no presumption applies under the 1993 version of HRS § 571–46(9).

## B.

Subsequently, on July 10, 1998, *see supra* note 1, the family court did enter a finding and conclusion regarding the issue of family violence in this case:

> [Finding 2.] All acts of the parties and [Husband's] parents employing the use of force upon the parties' children were age and size appropriate and reasonably calculated to address [the children's] misconduct.
>
> [Conclusion 2.] *All acts of physical discipline administered by the parties* and [Husband's] parents to the parties' children *did not constitute family violence and were permitted pursuant to HRS [§ ] 703–309(1)* [ (pertaining to the care and discipline of children) ].

(Emphases added.) As such, the family court in fact explicitly addressed the issue of whether Wife's actions on December 1, 1995 constituted family violence.

## IV.

Husband next asserts that the December 1, 1995 incident constituted "family violence." Although Husband's points of error do not challenge any of the family court's findings,[3] Husband appears to disagree with the family court's finding, quoted above, which characterizes Wife's slapping Daughter as "physical discipline." According to Husband, "[d]espite the [f]amily [c]ourt's characterization of Wife's acts as mere 'physical discipline[,]' these actions "[c]learly" constituted "family violence." [4]

Although a definition of the term "family violence" was not included in HRS chapter

**3.** As previously noted, Husband did not raise as points of error any of the family court's July 1, 1997 findings of fact and conclusions of law. Thus, this court need not address such issues. Hawai'i Rules of Appellate Procedure Rule 28(b)(4)(C).

**4.** In his opening brief, Husband cites the definition of "family violence" set forth in La.Rev.Stat. Ann. § 9:362(3) (West Supp.1997), and relies on a Louisiana decision applying this definition. The term "family violence" is defined by the Louisiana statute as:

> "Family violence" includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal

571 until 1996, *see* 1996 Haw. Sess. L. Act 198, § 2, at 450, we believe that this term as used in the 1993 version of HRS § 571–46(9) would not include the physical discipline of a child by its parent, as the family court found was administered by Wife.

## A.

Little clarification of the term "family violence" is found in the legislative history of the 1993 statute. We observe that subsection (9), which refers to family violence, was added to HRS § 571–46 in 1989 "to explicitly state that evidence of spousal abuse is to be considered a criteria [sic] for awarding custody of minor children." Sen. Stand. Com. Rep. No. 1346, in 1989 Senate Journal at 1310; *see also* Hse. Stand. Com. Rep. No. 835, in 1989 House Journal at 1146; 1989 Haw. Sess. L. Act 132, § 1, at 253. The Senate report indicated that the Judiciary had

> noted that the term 'spouse abuse' [used in the proposed Bill] should be *broadened to 'family violence' to cover other detrimental intra-familial conduct.* Upon consideration of the Judiciary's suggestion, [the Senate Judiciary Committee] amended th[e] bill to make evidence of *family violence (including spouse abuse)* one of the factors considered in child custody and visitation proceedings.

Sen. Stand. Com. Rep. No. 1346, in 1989 Senate Journal at 1310 (emphases added). Accordingly, the phrase "family violence" in the statute was not explained other than that it included spousal abuse.[5]

> Code of Louisiana, except negligent injuring and defamation, committed by one parent against the other parent or against any of the children. Family violence does not include reasonable acts of self-defense utilized by one parent to protect himself or herself or a child in the family from the family violence of the other parent.

La.Rev.Stat. Ann. § 9:362(3). Because this definition has not been adopted or otherwise approved by the Hawai'i legislature, we do not find Husband's reference to the Louisiana statutory definition, or the application of it, pertinent.

**5.** HRS § 571–46(9) was amended in 1993 by Act 228, which added "the determination regarding who was the primary aggressor" and "the fre-

### B.

However, in its July 10, 1998 conclusion 2, the family court ruled that the physical discipline administered to the children was "permitted pursuant to HRS [§ ] 703–309(1)." HRS § 703–309(1) (1993) expressly permits, subject to the conditions set forth therein, a parent to use physical force to discipline his or her child:

> The use of force upon or toward the person of another is justifiable under the following circumstances:
>
> (1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person, and:
>
> (a) The force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and
>
> (b) The force used is not designed to cause or known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.

(Emphases added.)

Hence, in State v. Tanielu, 82 Hawai'i 373, 922 P.2d 986 (App.1996), we recognized that the use of force in the discipline of children is not altogether prohibited:

> [O]n its face, HRS § 703–309 permits the use of physical force to punish a minor child for his or her misconduct and to deter that minor from future misconduct. A parent's use of physical force to punish or deter, therefore, is not subject to criminal liability[6] provided it is reasonably related to the welfare of the minor and within the scope of allowable physical force under the statute. Although the use of physical force as a child-rearing method may engender debate, it is an option parents are free to employ within the bounds of the statute.

Id. at 381, 922 P.2d at 994 (emphasis added). HRS § 577–7(a) (1993), which also relates to the discipline of children by their parents, provides, in relevant part, that parents "shall have control over the conduct and education of their minor children. . . . All parents . . . shall provide, to the best of their abilities, for the discipline, support, and education of their children." (Emphasis added.)

In light of HRS §§ 703–309(1) and 577–7(a), we conclude that the term "family violence" in HRS § 571–46(9) (1993) would not extend to the type of physical discipline of a child by his or her parent that is expressly permitted in HRS § 703–309(1). We do not believe that the legislature would sanction in one statute the use of certain physical force by a parent to discipline his or her children, and yet characterize in another statute the use of such force as family vio-

quency and degree of family violence" as factors to consider regarding the best interests of the child when awarding custody or visitation. 1993 Haw. Sess. L. Act 228, § 2, at 406. Act 228 also required the court to provide written reasons if it awarded custody to person "against whom there is evidence of family violence," and to arrange an award of joint custody or visitation "so as to best protect the child and the abused parent from further harm" if there was evidence of family violence. 1993 Haw. Sess. L. Act 228, § 2, at 407.

Nothing in the legislative history of Act 228 furnishes insight into what was meant by the term "family violence." The House report on Act 228 provided the following definition of the phrase "history of being an abusive spouse or parent" contained in one version of the act:

The phrase "history of being an abusive spouse or parent" includes but is not limited to that spouse's prior convictions and/or arrests for abusing the spouse or child, any acts of violence by that spouse against the spouse or child, medical records demonstrating injuries sustained by a spouse or child purportedly caused by that spouse, etc.

Hse. Stand. Com. Rep. 197, in 1993 House Journal at 1045. However, this phrase was not included in the final act approved by the legislature, and we thus cannot determine if this definition was what the legislature intended to express with the phrase "family violence."

6. We observe that the Introduction to the Model Code on Family and Domestic Violence (National Council. of Juvenile and Family Court Judges 1994) (Model Code) indicates that the Model Code "treats domestic and family violence as a crime which requires early, aggressive and thorough intervention." Model Code Introduction at vi.

lence, potentially depriving a parent of custody or visitation.

HRS § 703–309(1) does place limits on the use of physical force as a disciplinary measure, and these limits must be observed in order for a parent to obtain the protection from criminal liability provided by that statute. Without more guidance from the statutes, the co-existence of HRS §§ 571–46(9) (1993) and 703–309(1) in the law compels us to conclude that the limits in HRS § 703–309(1) also adequately served to guide the family court's application of HRS § 571–46(9) (1993) in determining the best interests of the child when awarding custody or visitation.

### C.

■ Husband points to nothing in the record that would indicate the finding that Wife's actions toward Daughter constituted "physical discipline," and, impliedly, not "family violence," was clearly erroneous. We uphold a trial court's findings of fact unless "(1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence to support the finding, [we are] nonetheless left with a definite and firm conviction that a mistake has been made." *State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (internal quotation marks and citations omitted). In accordance with the testimony given, the family court found that Wife's actions were taken for the purpose of disciplining the children. The family court's finding, therefore, confirms that Wife did act "within the bounds" of HRS § 703–309(1), *Tanielu,* 82 Hawai'i at 381, 922 P.2d at 994, in disciplining the children.

### V.

Even if we were to assume that HRS § 571–2 (Supp.1997) and HRS § 571–46(9) (Supp.1997) apply to the instant case, as the parties apparently believed, we would reach the same conclusions with respect to each of Husband's arguments. HRS § 571–46(9) provides:

> In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:

> ....

> (9) In every proceeding where there is at issue a dispute as to the custody of a child, *a determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence.* In addition to other factors that a court must consider in a proceeding in which the custody of a child or visitation by a parent is at issue, and in which the court has made a finding of family violence by a parent:

> (A) The court shall consider as primary the safety and well-being of the child and of the parent who is the victim of family violence;

> (B) The court shall consider the perpetrator's history of causing physical harm, bodily injury, assault, or causing reasonable fear of physical harm, bodily injury, or assault, to another person; and

> (C) If a parent is absent or relocates because of an act of family violence by the other parent, the absence or relocation is not a factor that weighs against the parent in determining custody or visitation[.]

(Emphasis added.)

In HRS § 571–2, the term "family violence" is currently defined as

> the occurrence of one or more of the following acts by a family or household member, but does not include acts of self-defense:

> (1) *Attempting to cause or causing physical harm to another family or household member;*

> (2) Placing a family or household member in fear of physical harm; or

> (3) Causing a family or household member to engage involuntarily in sexual activity by force, threat of force, or duress.

(Emphasis added.)

The term "physical harm" is not defined in HRS chapter 571 (Supp.1997).

## A.

■ With respect to Husband's argument that the family court failed to address the issue of family violence, we observe that HRS § 571–46(9) (Supp.1997) states that "a determination by the court that family violence has been committed by a parent raises a rebuttable presumption" concerning custody, and thus provides guidance to the court in the event that it decides family violence has been committed. This section does not mandate that the court make a determination that family violence did not occur. Additionally, we again observe that the trial court is not required to make "negative findings of fact." *Doe IV v. Roe IV,* 5 Haw.App. at 566, 705 P.2d at 542–43.

## B.

With respect to Husband's contention that Wife committed family violence, we do not believe that the definition of family violence set forth in HRS § 571–2 (Supp.1997) includes acts of physical discipline permitted by HRS § 703–309(1). Hence, we also do not consider the family court's finding of no family violence to be clearly erroneous.

The legislative history of HRS § 571–2 (Supp.1997), which sets forth a definition of family violence, indicates that Act 198 "[a]mend[ed] the definition of 'family violence' to track [the *Model Code on Domestic and Family Violence* (National Council of Juvenile and Family Court Judges 1994) (the Model Code) ]." Hse. Stand. Com. Rep. No. 1511–96, in 1996 House Journal, at 1625. The Model Code commentary on the definition of "family violence" provides, in pertinent part: "Domestic or family violence . . . identifies the conduct that is commonly recognized as domestic or family violence." Model Code § 102 commentary at 2. The Model Code commentary also appears to equate "family violence" with "abuse":

> [The Model Code provision on family violence] compels courts to consider the history, both the acts and patterns, of physical *abuse* inflicted by the *abuser* on other persons, including but not limited to the child and the abused parent, as well as the fear of physical harm reasonably engendered by this conduct. It recognizes that dis-

creet [sic] *acts of abuse* do not accurately convey the risk of continuing violence, the likely severity of future abuse, or the magnitude of fear precipitated by the composite picture of violent conduct.

Model Code § 402 commentary at 33 (emphases added).

■ Within this context, we cannot accept Husband's contention that the type of physical discipline that the family court determined was permitted by HRS § 703–309(1) would cause "physical harm" of the type defined. The physical discipline of a child by a parent specifically authorized by statute would not constitute the type of "abuse" that is "commonly recognized as domestic or family violence." Model Code § 102 commentary at 2. Accordingly, the "physical harm" encompassed in the definition of family violence in HRS § 571–2 would not preclude a parent's right to use force to discipline a child as permitted by HRS § 703–309(1), and duty to discipline a child under HRS § 577–7(a).

## C.

Husband relies on HRS § 571–46(9) (Supp. 1997) in arguing that the family court should have considered whether the presumption against awarding custody to Wife was rebutted. That section currently provides that "a determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence." Because the family court made the finding that no family violence by Wife had occurred, we point out that, by the plain terms of the statute, no such presumption arose and thus the family court could not have erred in "fail[ing] to address" whether Wife effectively rebutted the presumption.

However, even had the family court found that Wife committed "family violence," there is sufficient support in the record rebutting the HRS § 571–46(9) presumption that it would not be in the best interests of the children to be placed in the custody of Wife.

**1.**

■ While HRS § 571–46(9) does not specify the burden of proof required to rebut the presumption created by that section, the legislative history indicates that "[t]his is a presumption imposing the burden of producing evidence under [HRE] Rule 303." Hse. Stand. Comm. Rep. No. 1511–96, in 1996 House Journal, at 1625. In relevant part, HRE Rule 303 states:

> **Presumptions imposing burden of producing evidence.** (a) General rule. A presumption established to implement no public policy other than to facilitate the determination of the particular action in which the presumption is applied imposes on the party against whom it is directed the burden of producing evidence.
>
> (b) Effect. *The effect of a presumption imposing the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence,* in which case no instruction on presumption shall be given and the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption.

7. Husband's opening brief refers to North Dakota statutory and case law for "guidance for the proper application of HRS § 571–46(9)." However, unlike the presumption imposing the burden of producing evidence which we conclude applies in HRS § 571–46(9), the relevant North Dakota statute, N.D. Cent.Code § 14–09–06.2 (Supp.1997), provides in pertinent part that the "rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody ... *may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent."* (Emphasis added.)

It is significant that the Hawai'i legislature did not require that the presumption created by HRS § 571–46(9) (Supp.1997) be designated as a presumption under HRE Rule 304 (1993). That rule requires a presumption be rebutted by proof by a preponderance of the evidence. HRE Rule 304 states, in pertinent part:
**Presumptions imposing burden of proof.**

(Emphasis added.) Thus, the HRS § 571–46(9) presumption may be rebutted by the introduction of any evidence which would support a finding of the presumption's nonexistence.[7]

**2.**

In that regard, the family court made several undisputed findings regarding a social study[8] undertaken by Dr. Thomas Merrill (Dr. Merrill), which support the family court's custody award.

The family court concluded that "[p]ursuant to [HRS § ] 571–46, the 'best interests' of [the children] is [sic] served if [Wife] is awarded the sole legal and physical custody, subject to [Husband's] rights of reasonable visitation. . . ." In that connection, we observe that the family court "possesses wide discretion in making custody decisions, and unless there has been a manifest abuse of that discretion, its decision will not be set aside." *Fujikane v. Fujikane,* 61 Haw. 352, 355, 604 P.2d 43, 45 (1979). "An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 504, 880 P.2d 169, 179 (1994) (internal quotation marks and citation omitted).

> (a) General rule. A presumption established to implement a public policy other than, or in addition to, facilitating the determination of the particular action in which the presumption is applied imposes on the party against whom it is directed the burden of proof.
> (b) Effect. The effect of a presumption imposing the burden of proof is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced sufficient to convince the trier of fact of the nonexistence of the presumed fact. Except as otherwise provided by law or by these rules, *proof by a preponderance of the evidence is necessary and sufficient to rebut a presumption established under this rule.*
> (Emphasis added.)

8. The social study investigation was apparently made pursuant to HRS § 571–45 (1993) which requires, except when waived by the judge, that a social study be conducted in "proceedings to decide disputed or undetermined legal custody and in custody disputes arising out of a divorce."

  Because there was evidence produced, including Dr. Merrill's report, that it was in the children's best interests for Wife to be awarded sole legal and physical custody of the children, the presumption created by HRS § 571–46(9), had there been one, would have been effectively rebutted.

## VI.

Based on the foregoing, that part of the July 1, 1997 decree awarding child custody is affirmed.