2005-NMCA-101

117 P.3d 980

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**SCOTT LEFEVRE, Defendant–Appellant.**

No. 24,820.

Court of Appeals of New Mexico.

June 27, 2005.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Santa Fe, NM, Josephine H. Ford, Assistant Public Defender, Albuquerque, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} This appeal requires us to examine the thin line separating the parental discipline privilege and the crime of battery when a parent uses physical force to discipline a child. In this case, a parent angrily grabbed and held onto his child's hand, causing dis-comfort and a bruise. We reverse the battery conviction.

## BACKGROUND

{2} Twelve-year-old daughter (Daughter) and her younger brother (Son) are the children of parents who had been divorced for several years as of the date of the incident in January 2003 that is the subject of this appeal. They live with their mother. Defendant is their father.

{3} Evidence before the jury was generally along the following lines. According to Daughter, when she and Son left school on the day of the incident, Daughter intended to make sure that Son had all the books he needed to do his homework. Daughter would be involved in a sports tryout that afternoon and she would be unable to help him do his homework. In addition, Son was scheduled to visit with Defendant. While looking in Son's backpack for an assignment sheet, someone from behind her grabbed and squeezed Daughter's right hand "really hard." She turned around and saw that it was her father who grabbed her hand. Daughter testified that her father told her, "That's not your backpack" and when she stated, "Dad, that's not fair," he replied, "I'm sick of you." Daughter testified that Defendant's tone was harsh and that he held onto her hand for half a minute or less. She also testified that it hurt her. Defendant then left with Son, and Daughter went to the bathroom in the school to wash her face after crying. Daughter then went to tryouts. She told her mother what had occurred when her mother picked her up after tryouts. The mother asked Daughter if she wished to speak to the guardian ad litem appointed to oversee continuing timesharing issues after the divorce was final. However, the guardian ad litem was unavailable. The mother asked if Daughter wanted to see a doctor, and she said no. The mother asked if Daughter wanted to speak to a police officer and Daughter said yes. The officer testified that he observed a bruise on Daughter's hand. The bruise was on the top of her right hand, near the juncture of her thumb and first finger. It was a dark red mark the size of a dime.

{4} Defendant and the mother were separated in 1997 and divorced in 1998. Defendant stated that the divorce and aftermath was contentious. Defendant had visitation with Daughter once a month and visitation with Son every other weekend and every Wednesday. Defendant would pick up Son after school and return him in the evening to a neutral location for the mother to pick him up.

{5} Defendant testified that on his last visit with Daughter in December 2002; she refused to go to dinner with him, so they stayed at the neutral location and talked. During the visit, they talked about Son, and Defendant told Daughter that he was not getting "Wednesday notes," which were letters notifying parents of schedules and special activities, from the school. Defendant asked Daughter to leave the notes in Son's backpack so that he could look at them. Defendant told Daughter that he needed to read the notes and that he would then send them on to their mother. He further told Daughter that Son had told Defendant that she was taking the notes out of his backpack.

{6} Defendant testified that on the day in question he arrived early to pick up Son. After the elementary school let out, Defendant did not see Son. The middle school let out and he saw Daughter walk out. Defendant asked her where Son was. Daughter did not respond and kept walking toward the elementary school. Defendant thought that Daughter was trying to avoid him. He followed her to the elementary school and up steps to a point that Son came around a corner and Daughter ran up to Son, grabbed him by the shoulders, spun him around, unzipped his backpack, and took a manila folder out. Defendant thought, "[e]nough is enough." He went up to her, took her hand out, and said to Daughter, "I asked you not to do that," and then he zipped the backpack closed.

{7} Defendant testified that he was not angry, but was irritated, because Daughter was doing something he had asked her not to do. He did not intend to hurt her; he thought he had just lifted her hand out of the pack. There was no forcefulness and no resistance. Defendant and Daughter did not visit following this incident.

{8} Of note was the testimony of the guardian ad litem. Among other things, she testified that Daughter described the incident to her as occurring outside of the building, pointing to a place where there was a bush; whereas, Son told her that the incident happened in the school. Later, Daughter told the guardian ad litem that the incident happened in the school. The guardian ad litem also testified she had been involved in other cases that were as contentious as the one involving Defendant, the mother, and their children, Daughter, Son, and another daughter, but that this one had gone on longer than most.

{9} Defendant was charged with battery and abandonment or cruelty to child. He was tried in metropolitan court. The metropolitan court dismissed the abandonment or cruelty to child charge, but convicted Defendant of battery under NMSA 1978, § 30-3-4 (1963). Defendant obtained a de novo trial in district court.

{10} The district court found that Defendant "intentionally touched or applied force to [Daughter] by suddenly, without warning, and with inappropriate, unnecessary and abusive painful force, grabbing her by her hand[.]" The court also found that the touching was unlawful. Further, the court found that Defendant's words, "I'm sick of you," said in an angry manner just reinforced the finding. In Defendant's favor, the court found that his act was "not malicious, not savage [or] painfully vindictive," was an isolated incident, and one that the guardian ad litem was not required to report to the Children, Youth and Families Department as child abuse.

{11} Defendant appeals the battery conviction, arguing that his act of grabbing Daughter's hand was privileged under a parental control justification insulating him from criminal liability. As sub-issues, Defendant argues that (1) federal law recognizes a fundamental right of parents to make decisions concerning care, custody, and control of their children; (2) state law recognizes the common law parental control justification as an affirmative defense for offensive acts which

would otherwise be punishable under the battery statute; and (3) the district court erred in finding that the touching was unlawful, since the evidence shows Defendant's acts to be discipline and the discipline was not excessive or unreasonable and was therefore privileged.

## DISCUSSION

### 1. New Mexico Recognizes the Common Law Parental Control Privilege

█ {12} The United States Supreme Court has included within the Fourteenth Amendment's liberty interest a parent's right to direct his child's upbringing. *See Wisconsin v. Yoder*, 406 U.S. 205, 213–15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). However, for the protection of the welfare of the child the state has a right to limit parental freedom in raising children. *Prince v. Massachusetts*, 321 U.S. 158, 165–67, 64 S.Ct. 438, 88 L.Ed. 645 (1944). The difficult task of prosecutors and the courts is to determine when parental use of physical force in disciplining children violates criminal law. The United States Supreme Court has not addressed how parental physical force as a means of discipline is to be treated within the competing rights. *See State v. Wilder*, 748 A.2d 444, 449 n. 5 (Me.2000); Kandice K. Johnson, *Crime or Punishment: The Parental Corporal Punishment Defense—Reasonable and Necessary, or Excused Abuse?*, 1998 U.Ill. L.Rev. 413, 426.

{13} The common law recognized a parental privilege to use moderate or reasonable physical force. *See Wilder*, 748 A.2d at 449 n. 6; Johnson, *supra* at 434–37. Blackstone described a parental discipline privilege in stating that a parent "may lawfully correct his child, being under age, in a reasonable manner," and further that, "battery is, in some cases, justifiable or lawful; as where one who hath authority, a parent or a master, gives moderate correction to his child, his scholar, or his apprentice." *Wilder*, 748 A.2d at 449 n. 6 (quoting William Blackstone, *Blackstone's Commentaries on the Laws of England* 440 (Oxford reprint 1966), and William Blackstone, *Blackstone's Commentaries*

on the Laws of England 120 (1768)); *see also* Johnson, *supra* at 434–35.

{14} Our Supreme Court in the mid-nineteenth century followed suit. *Territory v. Miera*, 1 N.M. 387, 388 (1866) ("There are many strikings which are not unlawful, and so are not offenses which the laws punish; such as parents correcting their children[.]"). The New Mexico jury instruction on the element of unlawfulness states that an unlawful touching or confinement does not include nonabusive parental or custodial care. UJI 14–132 NMRA (citing *Miera*, 1 N.M. 387). This Court has also indicated that such a privilege exists in New Mexico. *See State v. Stein*, 1999–NMCA–065, ¶ 19, 127 N.M. 362, 981 P.2d 295 (stating that, in excluding "child" from the definition of a "household member" in the Crimes Against Household Members Act, NMSA 1978, §§ 30–3–10 to–16 (1995, as amended through 2001), the Legislature may have been concerned that those "new offenses . . . would abrogate the limited privilege of parents to impose physical discipline on their own children").

{15} The common law guidelines of reasonableness and moderation have been codified or otherwise continued into modern day expressions of the parental discipline privilege. *See, e.g., Newby v. United States*, 797 A.2d 1233, 1242–43 (D.C.2002) (stating that the "basic conception of the parental discipline defense is reinforced by decisions construing the common law of Maryland" to require a genuine disciplinary purpose and moderate or reasonable force, and noting that the " 'reasonable force' standard for genuine parental discipline appears to be the common law rule in the majority of jurisdictions"); *Johnson v. State*, 804 N.E.2d 255, 257 (Ind.Ct.App.2004) (stating that "[i]n order to be justified, the parental discipline must not be cruel or excessive"); *State v. Arnold*, 543 N.W.2d 600, 603 (Iowa 1996) (stating that Iowa "recognizes parents have a right to inflict corporal punishment on their child, but that right is restricted by moderation and reasonableness"); *State v. Adaranijo*, 153 Ohio App.3d 266, 792 N.E.2d 1138, 1140 (2003) (requiring a parent's force to be "proper and reasonable under the circumstances"); *State v. Singleton*, 41 Wash.App.

721, 705 P.2d 825, 827 (1985) ("A parent has a right to use reasonable and timely punishment to discipline a minor child within the bounds of moderation and for the best interest of the child.").

{16} We hold that, in New Mexico, a parent has a privilege to use moderate or reasonable physical force, without criminal liability, when engaged in the discipline of his or her child. Discipline involves controlling behavior and correcting misbehavior for the betterment and welfare of the child. The physical force cannot be cruel or excessive if it is to be justified. The parent's conduct is to be measured under an objective standard. *See id.* (stating that lawful force "is that which is reasonable and moderate as objectively determined by a jury").

### 2. Defendant's Act Fell within the Parental Privilege

{17} The battery offense of which Defendant was convicted proscribes "the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." § 30–3–4. The State had the burden to prove beyond a reasonable doubt all elements of the offense, including unlawfulness. *See State v. Parish,* 118 N.M. 39, 44–45, 878 P.2d 988, 993–94 (1994) (stating that a "defendant does not have the burden of proving ... self-defense"); UJI 14–132 (comm.cmt.) (stating that the State must prove unlawfulness beyond a reasonable doubt). When a parent's behavior falls within the parental privilege, the act is not unlawful. UJI 14–132 (comm. cmt.) Thus, when a question of parental privilege exists, the State must prove beyond a reasonable doubt that the parent's conduct did not come within the privilege. *Wilder,* 748 A.2d at 451; *see Parish,* 118 N.M. at 45, 878 P.2d at 994.

{18} In considering whether the State has disproved the justification, the court or jury is entitled to consider such factors as "the age, physical condition, and other characteristics of a child as well as with the gravity of the child's misconduct." *Arnold,* 543 N.W.2d at 603; *see also Singleton,* 705 P.2d at 827 (considering also "the kind of marks or wounds inflicted on the child's body

[and] the nature of the instrument used for punishment"). Nevertheless, there must exist some threshold at which parental physical force in the discipline of children is justified even though, technically, the elements of the battery offense can be proven. *See Wilder,* 748 A.2d at 452–53, 456 ("There is also a basis in law to set a threshold for the type of physical control of children by parents that will not result in criminal conviction absent special aggravating circumstances[,]" even recognizing that the district court could find "the technical elements of assault were proven.").

{19} We recognize that in reviewing a conviction we are to view "the evidence in the light most favorable to upholding the verdict." *State v. Mora,* 1997–NMSC–060, ¶ 27, 124 N.M. 346, 950 P.2d 789. However, there must exist for parents a harbor safe from prosecutorial interference in parental judgment. *See Model Penal Code and Commentaries* § 3.08, cmt. 2 (1985) ("[S]o long as a parent uses moderate force for permissible purposes, the criminal law should not provide for review of the reasonableness of the parent's judgment."). In our view, an isolated instance of moderate or reasonable physical force as that in the present case that results in nothing more than transient pain or temporary marks or bruises is protected under the parental discipline privilege. *See Wilder,* 748 A.2d at 453–56; *Adaranijo,* 792 N.E.2d at 1139–40; *see also* Johnson, *supra* at 471–72 (proposing a model statute permitting force that does not result in physical injury to the extent the force does not place the child at certain substantial risk and defining physical injury to exclude "transient red marks or temporary pain").

{20} This protection for parents should exist even if the parent acts out of frustration or short temper. Parents do not always act with calmness of mind or considered judgment when upset with, or concerned about, their children's behavior. Nor do parents always act pursuant to a clearly defined circumstance of discipline or control. A reaction often occurs from behavior a parent deems inappropriate that irritates or angers the parent, causing a reactive, demonstrative act. Heat of the moment must not result in immoderate physical force and must be man-

aged; however, an angry moment driving moderate or reasonable discipline is often part and parcel of the real world of parenting with which prosecutors and courts should not interfere. What parent among us can say he or she has not been angered to some degree from a child's defiant, impudent, or insolent conduct, sufficient to call for spontaneous, stern, and meaningful discipline?

{21} In the present case, no reasonable minds could differ on the legal consequence of Defendant's acts. The district court did not find or determine that Defendant had no legitimate disciplinary purpose whatsoever in mind. Even were a disciplinary purpose questionable or obscure, Defendant's act was an isolated one. He reacted when he saw Daughter with her hand in Son's pack. His demonstrative act, even if an angry touching, resulted in only a temporary, dime-sized bruise on Daughter's hand and transient pain. The force was relatively inconsequential; the injury was marginal. Defendant's conduct was not cruel or excessive, and considering the totality of circumstances, it was moderate and reasonable. "If such acts, … with no apparent evidence of any aggravating factors, are sufficient to support an assault charge, then any physical contact by a parent with a child that hurts the child may support an assault conviction if the State elects to prosecute." *Wilder*, 748 A.2d at 456.

{22} We determine that Defendant's conduct did not reach beyond the point of departure from justified parental discipline and was privileged, and that, as a matter of law, the evidence in this case was insufficient to support a determination of guilt on the charge of battery beyond a reasonable doubt.

## CONCLUSION

{23} We reverse Defendant's conviction of battery and remand with instructions to enter a judgment of acquittal.

{24} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and JAMES J. WECHSLER, Judge.