This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.                                                            **NO. 29,602**

**TOMMY VASQUEZ,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

Scott M. Davidson
Trace L. Rabern
Kevin P. Holmes, Practicing Law Student
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Defendant appeals his conviction for third degree child abuse. [RP 83] In his docketing statement he argued that the late disclosure of a witness denied him a fair trial, that a directed verdict should have been granted, and that his taped interview with police was inadmissible. Our notice proposed to affirm. Defendant filed a motion to amend the docketing statement and memorandum in opposition. We deny the motion to amend, concluding that it does not raise a viable issue. *State v. Sommer*, 118 N.M. 58, 60, 878 P.2d 1007, 1009 (Ct. App. 1994) (denying the defendant's motion to amend the docketing statement when the argument offered in support was not viable). We have considered the arguments in Defendant's memorandum, but are not persuaded by them. Accordingly, we affirm.

**DISCUSSION**

**A.  Directed Verdict**

Defendant argues that a directed verdict should have been granted. [DS 9; MIO 7-12] "A motion for a directed verdict challenges the sufficiency of the evidence." *State v. Armijo*, 1997-NMCA-080, ¶ 16, 123 N.M. 690, 944 P.2d 919. He also argues that the evidence is insufficient to support his conviction. [MIO 8-9] When we review

the evidence to decide whether it is sufficient, we "determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86. We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict. *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994).

The elements of child abuse in this case are that Defendant caused Victim to be cruelly punished and that Defendant acted intentionally and without justification. [RP 61] The evidence in the docketing statement contains evidence from which the jury could infer that Defendant, while attempting to impose discipline, cruelly punished Victim. We are not told Victim's age, but he does not appear to be old enough to attend school. [RP 12 (Victim wears a diaper.)] There is evidence of many bruises, some of which appeared to have been inflicted by a belt. [RP 10-11] Photographs of the injuries were available for the jury to see. [RP 76] The bruises were on Victim's head, face, lip, arms, feet, ankles, left leg, and lower back. These injuries were widespread over Victim's entire body, and a jury could reasonably decide that there was no justification for inflicting them. Defendant admitted that he caused at least some of the injuries [RP 10, 12-14] and there is evidence that Defendant was the

child's caretaker when the injuries were inflicted. [DS 6, RP 11, 13]

In his memorandum, Defendant makes arguments that he stands *in loco parentis* to Victim and had a constitutional right to discipline him. [MIO 7-12] Although it is questionable whether Defendant, who is not Victim's father or stepfather, is legally in *loco parentis*, we assume that he occupies that status. However, we do not agree that the evidence is so clear that he was engaging in justifiable discipline that a directed verdict was required or that the evidence was insufficient to support his conviction.

The line between justifiable discipline is for the jury to draw. The jury was not required to accept Defendant's version of events, that Victim was being punished for biting an infant child in the house or for attempting to leave the corner where he had been ordered to stay by Defendant. [MIO 11, RP 13] Nor was the jury required to accept Defendant's defense that he did not inflict cruel punishment. As we have mentioned, there was significant evidence of widespread bruising on a small boy's head, face, lip, arms, feet, ankles, left leg, and lower back, some of which appear to have been inflicted by a belt. These injuries were significant enough that they prompted Victim's daytime babysitter to discuss them with a police officer. [RP 9] Because these injuries were, by Defendant's own admission, more significant than

those in *State v. Lefevre*, 2005-NMCA-101, 138 N.M. 174, 117 P.3d 980, [MIO 12] we are not persuaded by Defendant's argument [MIO 9-12] that *Lefevre* requires us to hold that the evidence is insufficient. The child in *Lefevre* had only a single "dime-sized bruise" on her hand. *Id.* ¶ 21. That is very different from the evidence in this case.

It was for the jury to weigh and determine whether Defendant inflicted the injuries, whether they were part of justifiable discipline, or whether they crossed the line into cruel punishment. We cannot say the evidence was so clear that a directed verdict was required or that the evidence is insufficient. Defendant was not entitled to a directed verdict, and a rational jury could have found guilt beyond a reasonable doubt.

**B. Motion to Amend**

Defendant has moved to amend the docketing statement contending that the instructions did not sufficiently define what constitutes "cruelly punishing" a child. [MIO 1, 13-16] We review jury instructions to determine whether a reasonable juror would have been confused or misdirected by the jury instructions. *State v. Parish*, 118 N.M. 39, 42, 878 P.2d 988, 991 (1994). We consider jury instructions as a whole. *Id.* at 41, 878 P.2d at 990. Since there was no objection to the instructions below, we

review for fundamental error. *See State v. Munoz*, 2006-NMSC-005, ¶ 12, 139 N.M. 106, 129 P.3d 142. "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066, *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36, 146 N.M. 357, 210 P.3d 783.

Defendant likens his case to the situation in *State v. Mascareñas*, 2000-NMSC-017, 129 N.M. 230, 4 P.3d 1221. There, our Supreme Court found fundamental error where there was a "distinct possibility" that the defendant was convicted under the wrong standard, civil negligence rather than criminal negligence. *Id.* ¶ 21. In *Mascareñas,* the failure to instruct on the *mens rea* required was akin to a missing elements instruction. *Id.* ¶ 20. The instruction error in *Mascareñas* was so serious that there was "no way to determine that the jury delivered its verdict on a legally adequate basis." *Id.* ¶ 21.

We disagree that this case is like *Mascareñas*. The jury was instructed that the elements of the crime were that Defendant cruelly punished Victim and acted intentionally and without lawful justification. [RP 61] An instruction further defining "cruelly punished" would be a definitional instruction. Failure to give a definitional

6

instruction is not the equivalent of failure to instruct on an essential element, and therefore does not constitute reversible error. *See id.* ¶ 19. Moreover, the phrase "cruelly punished" is readily understandable and a jury is fully capable of determining what it means; there was no need for further definition. *See Munoz*, 2006-NMSC-005, ¶ 24 (stating that when the word or phrase is understandable and has a common meaning, there is no need for further definition). The instructions also include the phrase, "without lawful justification," which fully allowed Defendant to argue, as he did, that what he did was justified as parental discipline. [DS 7] Thus, the instructions in this case draw the line between justified behavior and cruel punishment and were sufficient to allow the jury to perform its constitutional task. Unlike the situation in *Macareñas*, we see no realistic possibility that Defendant was convicted based on any confusion about the correct standard. *See State v. Barber*, 2004-NMSC-019, ¶¶ 25-26, 135 N.M. 621, 92 P.3d 633 (finding no reversible error when there was no showing that the defendant was convicted based on a deficient understanding of the law).

Additionally, because this issue was not preserved, we review for fundamental error. As we have discussed, we see no error in the instructions. We also disagree that it would shock the conscience to allow Defendant's conviction to stand. Defendant suggests this is a close case involving a legitimate exercise of parental

discipline, but, as we have discussed, there is ample evidence to support Defendant's guilt. Victim was a young boy who had significant, documented injuries, and a jury could easily conclude that such injuries on a young child were excessive no matter what Victim had allegedly done. We find no error, much less fundamental error.

For these reasons, we deny the motion to amend the docketing statement. *See Sommer*, 118 N.M. at 60, 878 P.2d at 1009 (stating that a motion to amend is properly denied if it does not raise a viable issue).

## C.   Late Disclosure of a Witness

Defendant argues that his conviction should be reversed because of the State's late disclosure of its witness Dianna Proctor, Victim's aunt and caretaker. [RP 9] It made the disclosure on February 23, 2009, [RP 49] and the trial began on February 25. [RP 57] Defendant's objection to allowing her to testify was rejected. [DS 5] We review the district court's ruling on this issue for an abuse of discretion. *See State v. Duarte*, 2007-NMCA-012, ¶ 14, 140 N.M. 930, 149 P.3d 1027 (filed 2006).

When a witness is disclosed late, we consider whether the state breached some duty or intentionally deprived the defendant of evidence, whether the non-disclosed evidence was material, whether the defendant was prejudiced, and whether the trial court cured the failure to timely disclose the evidence. *See State v. McDaniel*, 2004-

NMCA-022, ¶ 8, 135 N.M. 84, 84 P.3d 701. Failure to disclose a witness's identity before trial is not a reason for reversal unless the defendant can show prejudice. *See Duarte*, 2007-NMCA-012, ¶ 15.

We are provided with no information about why the witness was not disclosed earlier. Defendant's memorandum in opposition provides us with some information, obtained from trial counsel, that appears to contain the arguments counsel made below, but it does not inform us of the basis for the court's ruling. Because Ms. Proctor was Victim's caretaker, and because her pretrial statements appear to be damaging to Defendant, [RP 11, 13] Defendant asserts that her testimony was material. [MIO 19-20]

However, Defendant has the burden of showing how, if Ms. Proctor had been disclosed earlier, his case would have been improved or how the defense would have prepared differently for trial. *See Duarte*, 2007-NMCA-012, ¶ 15. In his memorandum, Defendant argues that he was prejudiced by Ms. Proctor's non-verbal conduct on the stand and by the fact that she even testified at all. [MIO 20] This may demonstrate that her testimony was damaging, but that is not the appropriate test in this context. The test is whether the late disclosure prejudiced him; *i.e*., that the outcome of the trial would have been different if the witness had been disclosed

earlier, *McDaniel*, 2004-NMCA-022, ¶ 11, 13, not whether her appearance as a witness prejudiced him.

Addressing prejudice, Defendant argued below that because of her relationship with Defendant she "potentially" may have had "inside information" regarding the "tone and strategy" of the defense. [MIO 4] This claim is speculative. The memorandum in opposition is careful to note that she was present before and after Defendant's meetings with defense counsel, not that she attended those meetings. [MIO 4] Also, Defendant has not explained what that "inside" information would be or how it would have adversely affected his ability to cross-examine her. The abstract claim of "inside" information, without more, does not persuade us that reversal is warranted.

Defendant also argues that he needed to be able to cross-examine her about the fact that she conceivably could have been charged with child abuse. [MIO 20] If this claim is that she had received favorable treatment, or had an interest in placing blame on Defendant to protect herself, then we observe that these arguments form a common and straightforward avenue of cross-examination. Defense counsel had a day to prepare that avenue, and we are not persuaded that Defendant did not have sufficient time to prepare such standard cross-examination.

Turning to the last factor, our notice observed that the docketing statement did not contain a discussion of what, if anything, the court did to ameliorate any prejudice. [CN 3] We expressed our interest in knowing, for example, whether Defendant was given an opportunity to interview Ms. Proctor. [CN 3] According to Defendant, Ms. Proctor and Defendant lived together and had two children together. [MIO 20] That being true, Ms. Proctor would seem to have been available for an interview the day before the trial.

The memorandum in opposition addresses our concern, stating that "[t]he trial court failed to provide any reasonable remedy . . . because it did not [prescribe] any remedy whatsoever." [MIO 21] However, we are not told whether Defendant requested any remedy other than exclusion. If Defendant did not request the opportunity to interview her, then we fail to see why the court should be faulted for failing to prescribe "any remedy whatsoever." And, as we have noted, Ms. Proctor may well have been easily available to interview, without any order by the court. Consequently, Defendant has not demonstrated that he was denied the opportunity to talk with Ms. Proctor before the trial began.

More significantly, Defendant has not explained why one day would not be sufficient for him to prepare his cross-examination. Ms. Proctor had given pretrial

statements to the police that would have been available to Defendant, so it does not seem that Defendant would have been surprised by the gist of her testimony. If her trial testimony was going to be different from her pretrial statements, an interview by Defendant would have provided that information. Accordingly, we hold that Defendant had sufficient time to interview Ms. Proctor and would have been generally aware of her version of events, and, therefore, he was not prejudiced by the late disclosure. *See State v. Dominguez*, 2007-NMSC-060, ¶¶ 23-28, 142 N.M. 811, 171 P.3d 750 (noting that when a witness has not been disclosed in a timely fashion before trial, the opportunity to interview the witness is considered in the prejudice analysis). We hold that Defendant has not shown that, if she had been disclosed earlier, the outcome of the trial would have been different. *See McDaniel*, 2004-NMCA-022, ¶ 13.

**D.    Evidence**

Defendant argues that an audiotape of his interview with police should not have been played for the jury. [DS 6] Defendant specifically argues that doing so violated Rule 11-403 NMRA because the evidence was more prejudicial than probative. He also suggests that it was cumulative. [DS 9]

We review the admission of evidence for an abuse of discretion. *See State v.*

12

*Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. We find no abuse of discretion. The statement Defendant made to the police could be extremely probative. We are not told how these statements were prejudicial. Even if Defendant's statements were damaging, that fact does not establish that they were unfairly prejudicial. "The fact that competent evidence may tend to prejudice a defendant is not grounds for exclusion of that evidence. . . . The question is whether the probative value of the evidence was outweighed by its prejudicial effect." *State v. Hogervorst*, 90 N.M. 580, 588, 566 P.2d 828, 836 (Ct. App. 1977). An exact rendition of Defendant's own statement would be highly probative.

We also reject Defendant's argument that the taped statement should have been excluded as cumulative. Defendant's own words are more valuable and accurate than a second-hand rendition provided by the testimony of the police officer who interviewed him. Accordingly, we disagree that the audiotape of Defendant's exact statement was cumulative. For these reasons, we hold that Defendant has not demonstrated any abuse of discretion in admitting it.

Defendant's conviction is affirmed.

**IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**LINDA M. VANZI, Judge**

14