263 P.3d 116

STATE of Hawai'i, Plaintiff–Appellee,

v.

Richard D. DOWLING, Jr.,
Defendant–Appellant.

No. 30506.

Intermediate Court of Appeals of Hawai'i.

Aug. 30, 2011.

Chad N. Enoki, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Renee Ishikawa Delizo, Deputy Prosecuting Attorney, County of Maui, on the briefs, for Plaintiff–Appellee.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Richard D. Dowling, Jr. (Dowling) appeals from the Judgment of Probation filed on April 15, 2010 in the Family Court of the Second Circuit (family court).[1]

The family court found Dowling guilty of Abuse of Family or Household Member, in violation of Hawaii Revised Statutes (HRS) § 709–906 (Supp. 2010).[2]

On appeal, Dowling contends (1) there was insufficient evidence to support his conviction because the State of Hawai'i (State) did not prove beyond a reasonable doubt facts that negate his claim of parental discipline; (2) the mental distress suffered by the complaining witness, Dowling's eleven-year-old son (Minor), did not satisfy HRS § 703–309(1) (1993)[3]; and (3) Dowling's discipline was reasonably proportional to Minor's misconduct and reasonably necessary to protect Minor's welfare.

## I.

On January 28, 2010, the State charged Dowling by written complaint with Abuse of Family or Household Member. On April 7, 2010, the family court presided over Dowling's one-day, jury-waived trial.

1. The Honorable Michelle Drewyer presided.

2. HRS § 709–906 provides in relevant part:

   **§ 709–906 Abuse of family or household members; penalty.** (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4).

   For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.

3. HRS § 703–309(1) provides:

   **§ 703–309 Use of force by persons with special responsibility for care, discipline, or**

safety of others. The use of force upon or toward the person of another is justifiable under the following circumstances:

(1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person, and:

(a) The force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and

(b) The force used is not designed to cause or known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.

The State called Minor to testify. Minor was first shown several photographs, which he identified as having been taken around Christmas 2009. Minor stated that the photographs showed bruises on his legs.

Minor testified that after he finished vacuuming the house, he put the vacuum back into the hall closet and tried to close the closet door. He could not close the door because a rug was stuck under it. Dowling was walking past the closet to get to his room, but could not get past the open closet door. Dowling tried to fix the door, but could not, and he started getting angry. Minor testified that he had caused the rug to get stuck under the closet door, but when Dowling asked Minor if he had caused the door to become stuck, Minor repeatedly denied doing so. Dowling became angry because he thought Minor was lying. Dowling then pushed Minor on the shoulder, and Minor fell onto a bed in the parlor. At that point, Minor thought he was going to get "lickin's" because he had lied about the closet door. Dowling then hit Minor on the left leg twice while Minor was in a fetal position with his knees up and his hands protecting his face. Minor thought Dowling punched him with a closed fist. Dowling stopped hitting him when Minor yelled, began crying out loud, and told Dowling to stop. Minor stated that when Dowling hit his leg, it hurt and his leg hurt "a little bit" after the incident. He also stated that he was scared at the time of the incident.

Minor informed his great grandmother about the incident approximately one week later. Minor explained that he had bruises on both his legs from falling down with a wheelbarrow when he was cleaning the yard. Minor pointed out on his left leg the bruises that were made by Dowling and the bruises that were a result of his fall with the wheelbarrow.

Minor's great grandmother testified that after church services on Sunday, Minor asked her to come over to his house for lunch. Minor began to cry when they were in the car and then showed her his injuries.

Dowling's wife (Wife) testified that Minor complained to her that it was unfair he had to vacuum the house while his younger siblings were allowed to play outside. She stated that she believed Minor denied three times that he had shoved the closet door after Dowling confronted Minor and told him, "I am right here watching you do what needs to be done, and you are denying me in front of my face." Although she did not directly observe Dowling hit Minor, she did see Dowling's body gesture and concluded that Dowling had hit Minor. After being hit, Minor admitted that he shoved the stuck door, and Dowling walked away. After the incident, Wife told Minor to continue doing his chores, and Minor again complained that it was unfair. She testified that three to seven days prior to the closet incident she had seen bruising on Minor's left leg near his butt. She stated that Minor did not appear more anxious and did not exhibit signs of anxiety more than normal the week following the incident.

Dowling testified that he saw Minor open the door to put the vacuum cleaner in the closet without moving the rug in front of the door and observed how the door got stuck on the rug. He asked Minor three or four times how the door got stuck, and each time Minor denied opening the door on the rug. Dowling demanded to know why Minor was lying and informed Minor that he had observed what Minor did, but Minor "kept saying no, that he never." Dowling became angry because Minor was lying in front of him and Wife, and because lying was against the rules in the house, he spanked Minor. He pushed Minor onto a bed that was in the parlor. Dowling testified that he did not punch Minor on the leg, but rather hit Minor twice on the butt with an open palm and his fingers together.

The family court found Minor's testimony to be credible and believed that Dowling was extremely angry and pushed Minor onto the bed, the last thing Minor saw was Dowling's fist, and Minor got hit twice on his left side while covering his eyes. After acknowledging that Dowling had a right to discipline his child, the family court stated: "But I think this case just went a little bit too far. I think you lost your temper and you punched your son." The family court went on to state:

Did you go overboard or not?

You know, there is [sic] bruises on him. They are not huge bruises, but there are bruises.

You know, if I read 309—709–309 (1)(b), which states the force used is not designed to cause, or known to cause, or risk of causing substantial bodily injury.

Yes, you didn't break his bones. You didn't do anything like that. It wasn't—it didn't rise to that occasion. But, I do—I do believe that it rose to mental distress, and not just that he was going to get lickings at the time.

I think the evidence that the Court heard and [Minor's] testimony of what happened the Sunday following it, it was still on his mind. You know, Tuesday, Wednesday, Thursday, Friday, Saturday, Sunday, and he went to the person he testified he trusted the most who would help him. And he was that concerned about it, five days after the fact to tell somebody about it. And I think that is what rises, just this case goes over the edge just a little, you know, that it did cause mental distress.

So I'm going to find you guilty of the offense of abuse [of] family and household member.

After finding Dowling guilty of Abuse of Family or Household Member, the family court filed the Judgment of Probation on April 15, 2010. Dowling timely appealed.

## II.

### A.

On appeal, Dowling contends the family court erred by convicting him of Abuse of Family or Household Member because the State failed to adduce substantial evidence negating his justification defense of parental discipline.

To invoke the defense of justification under HRS § 703–309, [the defendant] was required to make a showing that the record

contained evidence supporting the following elements: (1) he was a parent, guardian, or other person as described in HRS § 703–309(1); (2) he used force against a minor for whose care and supervision he was responsible; (3) his use of force was with due regard to the age and size of the recipient and reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of misconduct; and (4) the force used was not designed to cause, or known to create a risk of causing, substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage. *See State v. Kaimimoku,* 9 Haw.App. 345, 349–50, 841 P.2d 1076, 1079 (1992). In turn, the prosecution had the burden of disproving beyond a reasonable doubt the justification evidence that was adduced, or proving beyond a reasonable doubt facts negativing the justification defense. *Id.* at 350, 841 P.2d at 1079.

*State v. Crouser,* 81 Hawai'i 5, 10–11, 911 P.2d 725, 730–31 (1996) (footnote omitted).

The family court found that Dowling's use of force caused mental distress to Minor. Based upon that finding, the family court found that the State satisfied its burden of disproving beyond a reasonable doubt Dowling's assertion of the parental discipline defense under HRS § 703–309(1)(b). The family court also found that Dowling's use of force caused bruising to Minor because Dowling lost his temper and "just went a little bit too far." Therefore, the family court found that the State satisfied its burden of disproving beyond a reasonable doubt Dowling's assertion of parental discipline defense under HRS § 703–309(1)(a).

In *Crouser,* the defendant, citing to *State v. Deleon,* 72 Haw. 241, 813 P.2d 1382 (1991), and *State v. Kaimimoku,* 9 Haw.App. 345, 841 P.2d 1076 (1992), contended that his use of force was justifiable under HRS § 703–309(1)(b) when compared to prior cases interpreting extreme pain under the cannon of construction of *noscitur a sociis.*[4]

4. *Noscitur a sociis* is Latin for "it is known by its associates" and is "[a] cannon of construction holding that the meaning of an unclear word or phrase should be determined by the words imme-

diately surrounding it." *Black's Law Dictionary* 1160–61 (9th ed. 2009); *see also, Crouser,* 81 Hawai'i at 13 n. 6, 911 P.2d at 733 n. 6.

*Crouser,* 81 Hawai'i at 12–13, 911 P.2d at 732–33. The Hawai'i Supreme Court stated:

As previously stated, HRS § 703–309(1) was amended in 1992 for the express purpose of "reducing the permitted level of force that a person responsible for the care of a minor ... may use." Hse. Conf. Comm. Rep. No. 103, in 1992 House Journal, at 843. In order to accomplish the purpose, "the standard of harm [was] lowered by lowering the level of risk, and reducing the permissible level of injury to that which is less than 'substantial' as defined in section 707–700 of the Hawaii Penal Code." Sen. Stand. Comm. Rep. No. 2208, in 1992 Senate Journal, at 1023. The changes made reflect the legislature's concern with results of the *noscitur a sociis* analysis employed in *Deleon.* "Death" and "gross degradation" were removed from the enumerated prohibited results because "the lower threshold makes [them] surplusage and [their] elimination removes the risk of other words in that paragraph being interpreted 'noscitur a sociis' with ... term[s] that [are] not pertinent to the lower threshold." Sen. Stand. Comm. Rep. No. 2493, in 1992 Senate Journal, at 1121; Hse. Conf. Comm. Rep. No. 2613, in 1992 House Journal, at 843. *"As a result of these changes, the terms retained from the prior law must be reinterpreted by the courts, since the changes affect the application of the rule of construction applied in State v. Deleon,* 72 Haw. 241, 813 P.2d 1382 (1991)." Sen. Stand. Comm. Rep. No. 2493, in 1992 Senate Journal, at 1121 (parenthetical omitted).

*Id.* at 13, 911 P.2d at 733 (emphasis added).

This court has not had an occasion to decide a case involving the mental distress provision in HRS § 703–309(1)(b), either prior to or after the 1992 statutory amendment.

In *Crouser,* the supreme court stated:

Subsection (b) of HRS § 703–309(1) defines the maximum degree of force that is justifiable under the statute. Subsection (a), as amended, makes clear that physical discipline may be so excessive that it is no longer reasonably related to safeguarding the welfare of the minor, even if it does not exceed the bounds set in subsection (b).

*Id.* at 12, 911 P.2d at 732. "[B]ecause the requirements of HRS § 703–309(1) are set out in the conjunctive, rather than the disjunctive, the prosecution needed only to disprove one element beyond a reasonable doubt to defeat the justification defense." *State v. Tanielu,* 82 Hawai'i 373, 380, 922 P.2d 986, 993 (App.1996) (internal quotation marks and citation omitted).

Thus, we first review whether Dowling's use of force exceeded the maximum degree of force that is justifiable under HRS § 703–309(1)(b) because exceeding such force is not justifiable as parental discipline. Even if the State did not disprove that Dowling's use of force exceeded the maximum degree of force that is justifiable, we must examine whether his use of force was excessive so that it was no longer reasonably related to safeguarding the welfare of Minor.

**B.**

The family court's finding that Dowling's action caused mental distress appears to be based, at least in part, on the fact that bruising resulted from Dowling's action. However, the Hawai'i Supreme Court recently affirmed that the proper focus of the family court's inquiry is whether a defendant's action was designed to cause or was known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage, not whether the force caused a prohibited result. In *State v. Kikuta,* 125 Hawai'i 78, 253 P.3d 639 (2011), the supreme court stated:

Thus, under HRS § 703–309(1)(b), in some instances, criminal liability will attach to a defendant even though a defendant's use of force did *not* result in substantial bodily injury, so long as the force used by the defendant was designed to cause or known to create a risk of substantial bodily injury. *See* [*State v. Miller,* 105 Hawai'i 394, 401, 98 P.3d 265, 272 (App. 2004) ] (affirming the family court's rejection of the defendant's parental discipline defense, based in part, on the family court's finding that although the force used on the minor did not result in any serious injury, "striking the victim about the head

did create the risk of causing substantial bodily injury or neurological damage"). Conversely, then, the defense instruction is not precluded if substantial bodily injury results, but the force used was not designed to cause or known to create a risk of substantial bodily injury. [*State v. Kikuta*, 123 Hawai'i 299, 233 P.3d 719 (App. 2010)] 2010 WL 2017646, at *10. Based on the foregoing, although acting conscientiously, the court erred in determining that [Kikuta] was precluded from having the jury instructed on the parental discipline defense because the force used against Complainant resulted in substantial bodily injury. *The plain language of the statute specifically ties the defense to criminal liability to the nature of the force used as opposed to the result of such use of force.*

*Id.* at 88–89, 253 P.3d at 649–50 (emphasis added).

Additionally, the family court's finding that Dowling's action caused mental distress, as opposed to extreme mental distress, disregarded the plain language of HRS § 703–309(1)(b), which clearly indicates that the word "extreme" modifies "pain or mental distress."

There are several Hawai'i cases which refer to or interpret "extreme pain." *Deleon,* 72 Haw. at 244, 813 P.2d at 1383–84 (extreme pain analogous to extreme mental distress); *Crouser,* 81 Hawai'i at 13, 911 P.2d at 733 (reinterpretation of extreme pain after statutory amendment); *State v. Miller,* 105 Hawai'i 394, 402, 98 P.3d 265, 273 (App.2004) (term extreme pain interpreted "noscitur a sociis with substantial bodily injury").

Hawai'i case law indicates that the word "extreme" in HRS § 703–309(1)(b) modifies "mental distress." In *Deleon,* the Hawai'i Supreme Court stated:

Given the facts here, viewed in the light most favorable to the State, the pain inflicted upon Penelope by her father in the course of the incident in question, does not come, in degree, anywhere near death, serious bodily injury, disfigurement, *extreme mental distress* or gross degradation. It

therefore was not, as a matter of law, serious pain.

*Deleon,* 72 Haw. at 244, 813 P.2d at 1384 (emphasis added; footnote omitted). In *Crouser,* the supreme court restated its interpretation of HRS § 703–309(1)(b) in *Deleon* as follows:

Crouser asserts that, because the force he used on Minor did not exceed the level applied in *State v. Deleon,* 72 Haw. 241, 813 P.2d 1382 (1991), and in *Kaimimoku,* it was justifiable under HRS § 703–309(1)(b). In *Deleon,* the trial court convicted the defendant based upon its finding that he was guilty of causing "extreme pain" when he struck his fourteen-year-old daughter six to ten times with a folded belt above the knee and over her pants. The daughter had testified that "she felt a little pain, that the spanking stung her, and that the pain lasted an hour and a half. She had bruises for about a week. She cried for half an hour." 72 Haw. at 242, 813 P.2d at 1383. Because the phrase "extreme pain" was not defined in the statute, this court employed "an ancient canon of construction," *noscitur a sociis,* and reasoned that the pain inflicted did not come anywhere near, in degree, the other statutorily forbidden results. Thus, we held that the defendant's conduct was justified under HRS § 703–309(1) and reversed the conviction. *Id.* at 244–45, 813 P.2d at 1383–84. We note that, at the time *Deleon* was decided, the other prohibited results were death, serious bodily injury, disfigurement, *extreme mental distress,* or gross degradation. *Id.*

*Crouser,* 81 Hawai'i at 12–13, 911 P.2d at 732–33 (emphasis added; footnote omitted).[5] Therefore, HRS § 703–309(1)(b), according to *Deleon* and *Crouser,* prohibits force that is designed to cause or is known to create the risk of causing *extreme* mental distress, not merely mental distress.

## C.

There is no statutory definition of "extreme mental distress" within HRS Chapter

---

5. The 1992 statutory amendment did not affect the language in HRS § 703–309(1) regarding "extreme ... mental distress."

703. There is no Hawai'i case that defines extreme mental distress within the context of HRS § 703–309(1)(b).

"The terms 'emotional distress,' 'mental anguish,' and 'mental distress' are synonymous." *First Ins. Co. of Hawai'i, Ltd. v. Lawrence*, 77 Hawai'i 2, 7 n. 9, 881 P.2d 489, 494 n. 9 (1994). *Black's Law Dictionary* 601 (9th ed. 2009) provides:

> "Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." *Restatement (Second) of Torts* § 46 cmt. j (1965).

By requiring the mental distress to be extreme, the plain language of HRS § 703–309(1)(b) clearly prohibits force that is designed to cause or known to create the risk of causing something more than the ordinary definition of emotional or mental distress.

In *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970), the Hawai'i Supreme Court first recognized the tort of negligent infliction of mental distress without a showing of physical injury. The court stated:

> We propose a standard similar to that adopted by the Restatement with regard to the intentional infliction of mental distress. *See Restatement Second, Torts* § 46 comment j at 77. Courts and juries which have applied the standard of conduct of "the reasonable man of ordinary prudence" are competent to apply a standard of serious mental distress based upon the reaction of "the reasonable man." *Cf.* Prosser, *Intentional Infliction of Mental Suffering; A New Tort*, 37 Mich. L.Rev. 874 (1939). We hold that a serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.

*Id.* at 173, 472 P.2d at 520.

The legislative intent of the 1992 statutory amendment to HRS § 703–309(1) also indicates that "the standards in the new law should be interpreted in light of the age of the child." S. Stand. Comm. Rep. No. 2493, in 1992 Senate Journal, at 1121. Thus, the finder of fact should employ a reasonable person standard that considers the minor's age when determining whether a defendant's action was designed to cause or was known to create the risk of causing extreme mental distress.

### D.

In its reasoning for concluding that Dowling was guilty of Abuse of Family or Household Member, the family court found that Dowling's action caused mental distress (not extreme mental distress). Such a finding was not sufficient to negate Dowling's assertion of a parental discipline defense.

In *Tanielu*, the defendant claimed the family court's finding that he caused a laceration was insufficient to disprove the parental discipline defense because a finding that the injury was a "major" laceration was required to satisfy the "substantial bodily injury" requirement of HRS § 703–309(1)(b). *Tanielu*, 82 Hawai'i at 379–80, 922 P.2d at 992–93. This court held that the word "major," as used in defining the term "substantial bodily injury" in HRS § 707–700 (Supp.2010), modified the word "laceration." *Tanielu*, 82 Hawai'i at 379, 922 P.2d at 992. Thus, this court concluded that "[w]hen the family court apparently failed to apply the legal requirement that lacerations suffered by Daughter or for which she was put at risk were or would be 'major,' it reversibly erred." *Id.*

In the instant case, when the family court found that Dowling's action was designed to cause or was known to create the risk of causing mental distress (rather than extreme mental distress), it was insufficient to disprove the parental discipline defense.

■ However, assuming arguendo, that the family court utilized the proper legal standard, the evidence does not support a finding of extreme mental distress. The evidence adduced at trial was that Dowling punched Minor's left leg twice with enough force to cause bruising. The family court noted that the incident was still on the mind of Minor nearly a week later. However, we have concluded there is not substantial evidence that Dowling's punching Minor twice on Minor's left leg was designed to cause or was known to create the risk of causing extreme mental distress, beyond that associated with the discipline itself, such that an eleven-year-old child would be unable to cope with the mental distress engendered by the circumstances of the case. *State v. Eastman*, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996). There is also nothing in the record to indicate that such force was known to create the risk of causing extreme mental distress. Therefore, the State did not disprove beyond a reasonable doubt Dowling's parental discipline defense under HRS § 703–309(1)(b).

**E.**

■ We must next examine whether Dowling's physical discipline was so excessive that it was no longer reasonably related to safeguarding the welfare of Minor, even if it did not exceed the bounds set in subsection (b) of HRS § 703–309(1). *Crouser*, 81 Hawai'i at 10–11, 911 P.2d at 731–32.

There is no dispute that Dowling is a parent of Minor and he used force against Minor, for whose care and supervision he was responsible. Therefore, Dowling satisfied the first two elements of the parental discipline defense under HRS § 703–309(1)(a).

Dowling claimed he hit Minor because Minor had repeatedly lied to him even after he informed Minor that he witnessed Minor cause the door to become stuck. Dowling maintains he satisfied the third element of

HRS § 703–309(1)(a) because he made a showing that his "use of force was with due regard to the age and size of the recipient and reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of misconduct." *Crouser*, 81 Hawai'i at 10–11, 911 P.2d at 730–31. If so, the burden shifted to the State to disprove beyond a reasonable doubt Dowling's justification evidence or prove beyond a reasonable doubt facts negating the justification defense. *Id.* at 11, 911 P.2d at 731.

■ "[T]o be 'reasonably related' to the purpose of punishing misconduct, use of force must be both reasonably proportional to the misconduct being punished and reasonably believed necessary to protect the welfare of the recipient." *Id.* at 12, 911 P.2d at 732. The family court noted that Dowling's bruising of Minor and acting out of anger when disciplining Minor were the reasons Dowling's discipline was not reasonably related to the purpose of safeguarding or promoting the welfare of Minor. On appeal, the State points to the same factors as substantial evidence that it disproved Dowling's parental discipline defense.

In *Miller*, this court affirmed the defendant's conviction for abuse of a family or household member when the "viciousness of the attack [Miller] was involved in severed any relationship between the use of force and the welfare" of the complaining witness that "might be considered reasonable." 105 Hawai'i at 395 & 402, 98 P.3d at 266 & 273. In *Miller*, the complaining witness testified that Miller attempted to pick him up by his ear and hair; kicked him; and hit him five times with a fist to his face, ribs, and maybe back. *Id.* at 396, 98 P.3d at 267. The complaining witness's injuries were described as scratches to the right side of his face and ears; pain in his head, back, and ribs; and a lump on the back of his head. *Id.*

In *State v. Matavale*, 115 Hawai'i 149, 166 P.3d 322 (2007), the Hawai'i Supreme Court stated:

As other courts have recently expressed and we agree,

an isolated instance of moderate or reasonable physical force ... that results in nothing more than transient pain or temporary marks or bruises is protected under the parental discipline privilege.

This protection for parents should exist even if the parent acts out of frustration or short temper. Parents do not always act with calmness of mind or considered judgment when upset with, or concerned about, their children's behavior. Nor do parents always act pursuant to a clearly defined circumstance of discipline or control. A reaction often occurs from behavior a parent deems inappropriate that irritates or angers the parent, causing a reactive, demonstrative act. Heat of the moment must not result in immoderate physical force and must be managed; however, an angry moment driving moderate or reasonable discipline is often part and parcel of the real world of parenting with which prosecutors and courts should not interfere. What parent among us can say he or she has not been angered to some degree from a child's defiant, impudent, or insolent conduct, sufficient to call for spontaneous, stern, and meaningful discipline?

*State v. Lefevre,* [138 N.M. 174, 178–79, 117 P.3d 980, 984–85 (N.M.Ct.App.2005) ].

*Id.* at 166, 166 P.3d at 339.

In *Kikuta,* the Hawai'i Supreme Court recently affirmed its holding in *Matavale* and added:

This court has acknowledged on another occasion that the fact that the use of force may have arisen out of anger or short temper[ ] does not automatically mean that such force was not reasonably related to the purpose of safeguarding or promoting the welfare of the minor, or for the prevention or punishment of misconduct.

*Kikuta,* 125 Hawai'i at 91, 253 P.3d at 652.

In *Matavale,* the supreme court, quoting a Hawai'i Senate standing committee report, stated:

In 1992, the legislature, in considering an amendment to HRS § 703–309(1) (1985), expressly recognized—through the

adoption of a standing committee report by the Senate Judiciary Committee—that

the line between physical abuse and appropriate parental discipline is a very subjective one. What one parent considers discipline may seem abusive to another. *Your Committee had to consider how best to draw the line in the context of the legal defense provided for parents* [and] *guardians ... when determining guilt in a criminal trial. Your Committee believes that the "gray areas" must be resolved by not criminalizing such parental discipline, even if a majority of the community would find the extent of the punishment inappropriate.*

Sen. Stand. Comm. Rep. No. 2493, in 1992 Senate Journal, at 1121 (emphases added).

*Matavale,* 115 Hawai'i at 160–61, 166 P.3d at 333–34. Considering the evidence in *Matavale,* the Hawai'i Supreme Court concluded, as a matter of law, that the State failed to present sufficient evidence to negate the defendant's parental discipline defense. 115 Hawai'i at 164–68, 166 P.3d at 337–41. Because Matavale's fourteen-year-old daughter lied about attending tutoring classes and forgetting her report card at school and refused to answer Matavale's questions about the report card and classes, Matavale hit daughter with a plastic backpack, a plastic hanger, the flat side of a car brush, and the plastic handle of a tool, leaving a few markings on daughter's arm and small bruises. *Id.* at 151–54, 166 P.3d at 324–27.

Although Dowling's punches were forceful enough to cause bruising, they were not forceful enough to rise to the level of viciousness in *Miller,* in which the level of attack "severed any relationship between the use of force and the welfare" of the complaining witness that "might be considered reasonable." 105 Hawai'i at 402, 98 P.3d at 273. It is at most a "gray area" in which some of the community would find that Dowling's extent of punishment was inappropriate. However, under *Matavale,* such gray areas are not resolved by criminalizing such parental discipline. Therefore, there was insufficient evidence to disprove Dowling's parental discipline defense under HRS § 703–309(1)(a).

## III.

The Judgment of Probation filed on April 15, 2010 in the Family Court of the Second Circuit is reversed.

### Concurring and Dissenting Opinion by NAKAMURA, C.J.

The family court concluded that the prosecution had disproved the parental discipline defense [1] of Defendant–Appellant Richard D. Dowling, Jr. (Dowling) based on its finding that Dowling's actions had caused "mental distress" to his minor son (Minor). I agree with the majority that the family court misapplied the law in concluding that this finding negated the defense under the excessive-force limitation set forth in Hawaii Revised Statutes (HRS) § 703–309(1)(b). I also agree with the majority that there was insufficient evidence to disprove the defense under HRS § 703–309(1)(b).

I do not agree that there was insufficient evidence to disprove the defense under HRS § 703–309(1)(a). However, it is not apparent from the record that the family court relied on HRS § 703–309(1)(a) in concluding that the prosecution had disproved the parental discipline defense. Because I cannot tell whether the family court would have found Dowling guilty absent its misreading of HRS § 703–309(1)(b), I would vacate Dowling's conviction and remand the case for a new trial.

Accordingly, I concur with the majority to the extent that it concludes that Dowling's conviction cannot stand, but I respectfully dissent from the majority's decision to reverse Dowling's conviction without the opportunity for a new trial.

---

1. The parental discipline defense is set forth in Hawaii Revised Statutes (HRS) § 703–309(1) (1993), which provides as follows:

    **§ 703–309 Use of force by persons with special responsibility for the care, discipline, or safety of others.** The use of force upon or toward the person of another is justifiable under the following circumstances:

    (1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person, and:

## I.

In rendering and explaining its verdict, the family court stated, in pertinent part, as follows:

THE COURT: Mr. [Defense counsel], you are reading 703–309(1)(b) to me, and you are inferring that the Court would have to find that he caused substantial bodily injury. *I don't read that Section that way. I think I read it as being causing the substantial injury, disfigurement, extreme pain, or mental distress, or neurological damage.*

*The Court could very well find mental distress,* is that (inaudible). Are you just saying I have to find substantial bodily injury?

[DEFENSE COUNSEL]: No, no, absolutely not. Absolutely not.

But I would say that you need to read it in (inaudible) material, that is that level of—is that level of abuse that we are talking about.

. . . . .

THE COURT: Well, I have listened very carefully to all of the evidence today, and I have listened to [Minor's] testimony, which, quite frankly, I thought was extremely credible.

I believe the Court finds [Minor's] description of what happened entirely believable. I believe from hearing the evidence that [Minor] knew he was going to get a licking, he knew his dad was extremely angry. He got pushed down onto the bed, and the last thing he saw was a fist, and then he covered his eyes and he got hit twice on his left side.

(a) The force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and

(b) The force used is not designed to cause or known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.

His testimony was his mother was in the room trying to break it up, he was crying, saying stop, don't hit me. It hurt.

. . . .

Now, is it justified under 703–309? A parent has a right to discipline their kid. Absolutely. You know, you have a right to do that. But I think this case just went a little bit too far. I think you lost your temper and you punched your son. I don't believe your testimony to be credible at all. I don't believe [Minor] was laying on the bed with his feet sticking straight up, and you can have a whack at his right butt cheek. I just don't see any evidence of that. I don't—you know, when you demonstrated it on the stand, you pretty much demonstrated what [Minor] did. You know, he is scared. He put his hands over his head. He didn't want to get hit in the head.

. . . .

THE COURT: . . . .

Your lawyer has a good point. You know, you are allowed to discipline your child. It might not be the way the thinking is now, that you should physically hit your kid, but you are allowed to do that.

Did you go overboard or not?

You know, there is bruises on him. They are not huge bruises, but there are bruises.

You know, *if I read 309—703–309(1)(b), which states the force used is not designed to cause, or known to cause, or risk of causing substantial bodily injury.*

Yes, you didn't break his bones. You didn't do anything like that. It wasn't—it didn't rise to that occasion. *But, I do—I do believe that it rose to mental distress,* and not just that he was going to get lickings at the time.

I think the evidence that the Court heard and [Minor's] testimony of what happened the Sunday following it, it was still on his mind. You know, Tuesday, Wednesday, Thursday, Friday, Saturday, Sunday, and he went to the person he testified he trusted the most who would help him. And he was that concerned about it, five days after the fact to tell

somebody about it. *And I think that is what rises, just this case goes over the edge just a little, you know, that it did cause mental distress.*

So I'm going to find you guilty of the offense of abuse on family and household member.

(Emphases added.)

## II.

The record indicates that the family court concluded that the prosecution had disproved the parental discipline defense under the excessive-force limitation set forth in HRS § 703–309(1)(b) by virtue of the family court's finding that Dowling's use of force had caused "mental distress" to Minor. However, the excessive-force limitation requires that the force used was "designed to cause or known to create a risk of causing ... *extreme* ... mental distress[.]" HRS § 703–309(1)(b) (emphasis added). The family court's finding that Dowling's use of force caused mental distress to Minor was inadequate to invoke the excessive-force limitation and to disprove the parental discipline defense based on HRS § 703–309(1)(b).

The family court's statements in rendering its verdict reveal that it relied upon an erroneous view of the law in rejecting Dowling's parental discipline defense and in finding Dowling guilty of abuse of a family or household member. I further agree with the majority that there was insufficient evidence to support a finding that Dowling's use of force against Minor was designed to cause or known to create a risk of causing extreme mental distress. I concur with the majority to the extent that it concludes that Dowling's conviction cannot stand.

## III.

However, I disagree with the majority's conclusion that there was insufficient evidence to negate the parental discipline defense under HRS § 703–309(1)(a). Under HRS § 703–309(1)(a), a parent's use of force against his or her child is justifiable if "[t]he force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or

promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct[.]" In construing HRS § 703–309(1)(a), the Hawai'i Supreme Court has held that "to be 'reasonably related' to the purpose of punishing misconduct, *use of force must be both reasonably proportional to the misconduct being punished and reasonably believed necessary to protect the welfare of the recipient.*" *State v. Matavale*, 115 Hawai'i 149, 163, 166 P.3d 322, 336 (2007) (quoting *State v. Crouser*, 81 Hawai'i 5, 12, 911 P.2d 725, 732 (1996)). "[T]he question of reasonableness or excessiveness of physical punishment given a child by a parent is determined on a case-by-case basis and is dependent upon the particular circumstances of the case." *Id.* at 165, 166 P.3d at 338.

Whether Dowling's use of force against Minor was both reasonably proportional to the misconduct being punished and reasonably believed necessary to protect Minor's welfare was a factual question for the trier of fact to resolve. Based on the evidence presented, a reasonable trier of fact could certainly have resolved this factual question in Dowling's favor. However, the test for sufficiency of evidence is not whether the trier of fact could have found for the defendant, but whether when viewed in the strongest light for the prosecution, there was substantial evidence to support the defendant's guilt. *See State v. Richie*, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998).

When viewed in the strongest light for the prosecution, the evidence showed that Dowling, with a closed fist, punched Minor twice out of anger, after becoming mad over Dowling's inability to open a closet door that Minor had gotten stuck on a rug. I believe that sufficient evidence was presented for a reasonable trier of fact to find that Dowling's use of force was *not* "both reasonably proportional to the misconduct being punished and reasonably believed necessary to protect the welfare of the recipient." *See Crouser*, 81 Hawai'i at 12, 911 P.2d at 732. Thus, I do not agree with the majority's decision to reverse Dowling's conviction.

**2.** Because the prosecution in this case only presented sufficient evidence to disprove the parental discipline defense based on HRS § 703–309(1)(a) and not based on HRS § 703–

## IV.

The family court's statements indicate that it based its verdict on the erroneous conclusion that its finding that Dowling had caused mental distress to Minor meant that the prosecution had disproved the parental discipline defense under HRS § 703–309(1)(b). It is not apparent from the record that the family court relied on HRS § 703–309(1)(a) in concluding that the prosecution had disproved the parental discipline defense. Accordingly, the sufficiency of the evidence to disprove the defense under HRS § 703–309(1)(a) does not provide a valid basis to affirm Dowling's conviction.

I believe Dowling's conviction should be vacated and the case remanded for a new trial.[2]

FOLEY and GINOZA, JJ.; NAKAMURA, C.J., Concurring and Dissenting Separately.

309(1)(b), the prosecution on retrial would be limited to disproving the parental discipline defense based on HRS § 703–309(1)(a).